Argued January 4, affirmed May 25, 1966

# SPRINKLE *v.* LEMLEY ET AL

414 P. 2d 797

*Hugh B. Collins,* Medford, and *Bruce Spaulding,* Portland, argued the cause for appellants. With Mr. Collins on the briefs for appellant Rutter was E. K. Oppenheimer, Portland. On the briefs for appellant Lemley were Mautz, Souther, Spaulding, Kinsey & Williamson and James F. Spiekerman, Portland.

*Bernard P. Kelly,* Medford, argued the cause for respondent. On the brief were Kelly, Grant & Cooney, Medford.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Schwab, Justices.

DENECKE, J.

When the plaintiff was three years old she suffered a comminuted fracture of her upper left leg. She was treated by the defendants. She alleges that their treatment was negligent and that she was injured thereby.

The jury awarded plaintiff damages and the defendants appeal.

The plaintiff, Cherol, was injured on June twenty-eighth and brought to a hospital. The defendant Dr. Lemley was the Sprinkle family physician. He is an osteopathic physician engaging in general practice. He called in the defendant Dr. Rutter, an osteopathic surgeon specializing in general surgery. Both defendants treated Cherol. Cherol was placed in casts encircling both legs and extending the full length of the legs. She was then placed in traction with her legs extending straight up in the air approximately at a 90 degree angle to her body. On July fifth she was taken home, but the casts were left on and she was placed in the same kind of traction.

The casts were removed on July twenty-sixth and sores were observed. Shortly thereafter a foot drop was noticed. In the middle of September Dr. Lemley called in an orthopedic surgeon because Cherol had "a fairly ankylosed joint in the left foot." In April of the next year the orthopedist performed surgery to correct the deformity in the left foot.

The diagnosis by the orthopedist was "Volkmann's ischemic contracture," which "is a process that goes on in the muscles of the leg below the knee due to a deprivation of someone's blood supply so that the muscles undergo scarring and degeneration."

The defendants contend the trial court erred in failing to sustain their demurrer, which was upon the ground that the complaint failed to state a cause of action and in failing to strike certain specifications of negligence. Defendants contend that the complaint failed to allege facts from which a duty to act would arise and failed to allege that a breach of such duty was a cause of plaintiff's injury.

■ The complaint alleged that the defendants and the plaintiff were in a doctor-patient relationship. The complaint alleged: "* * * That defendants in the course of such employment were negligent as hereinafter alleged * * *. [Then the specific charges of negligence were alleged.]" As examples of such specific charges and defendants' objections thereto, the following specifications are quoted: "Defendants maintained plaintiff's legs in said full length leg casts to each leg while maintaining plaintiff in a position on her back whereby her legs were elevated at a 90 degree angle to the rest of her body, thus further impairing the circulation in both of said legs and especially the injured leg"; and "They failed to properly pad said casts."

Defendants contend this is not sufficient. They assert: "Matters of medical practice, as special customs or usages in a particular profession, must be specially pleaded to define the defendant's duty." They contend that more specificity is necessary in pleading negligence in a malpractice case than in other kinds of negligence cases.

This same contention was made in *Orendino v. Clarke*, 240 Or 518, 519, 402 P2d 527 (1965). We there stated: "A pleading sufficiently states a cause of action for malpractice if it advises the defendant that his patient claims that the doctor negligently examined and treated the patient, and alleges sufficient facts to show the particulars in which the examination and treatment, under the circumstances, were negligent."

The same pleading principle is correct as applied to the pleading of causation. Plaintiff's complaint alleged: "That as a direct and proximate result of the negligence of defendants as previously alleged, plain-

tiff developed an ischemic contracture * * *." This is sufficient.

The trial court was correct in overruling the demurrer and denying the motions to strike.

■ The defendants next urge that there is no evidence that any act or omission on the defendants' part was the cause of plaintiff's injuries. This was brought to the trial court's attention by a motion for a directed verdict and a motion to withdraw from the jury each specification of negligence.

There was medical opinion testimony that the alleged negligence of the defendants caused plaintiff's injuries. For example, the examination of a Dr. Hald was as follows:

> "Q Now, Doctor, do you have an opinion as to whether or not there is any causal connection between the practice which I designated in my hypothetical question and which you have just referred to in your testimony and the ischemic contracture which was diagnosed?
> "A I do.
> "Q And what is that opinion?
> "A I believe that the application of the cast made it impossible to detect the onset of any ischemic contracture, and without the detection, prevention could not take place, and therefore, because the casts were applied, unpadded on a recently injured leg, in which knowledge of the swelling that would take place in the future hours after application of the cast was not available, and the constrictive action of the cast produced sufficient disturbance to the leg and its components so that the end result was that which we call ischemic contracture."

On cross-examination the witness admitted he was not able to state unequivocally that the charged negligence was the cause, but he did not change his opinion that it was probably the cause. Likewise, on cross-

examination the same physician admitted uncertainty as to just where on the leg the circulation was impaired by the cast and traction. While this may have weakened his testimony on causation, it did not destroy it.

Defendants raised the medical causation issue in another manner by requesting instructions to withdraw from the jury the various items of claimed injuries. We hold the trial court was correct in refusing to give such requested instructions. In advancing these particular assignments of error the defendants made the additional argument that a tight cast does not cause ischemic contracture and supports this contention by quoting the testimony of physicians called as witnesses by plaintiff that "* * * [pressure sores] * * * [have] nothing at all to do with the fact that an ischemic contracture developed."

The weakness in defendants' argument is that cast pressure can exist without being evidenced by pressure sores. The testimony was that too tight a cast in the upper leg will not be evidenced by pressure sores. Witnesses testified that the bony prominences found in the lower leg cause the existence of cast pressure to be exhibited by sores on the skin, whereas this is less likely on the upper leg where there is more soft tissue. There was evidence from which the jury could have found that the casts were too tight and this in combination with other circumstances caused plaintiff's injuries.

The following instruction on the respective liabilities of the defendants was given:

"You are instructed that physicians who are employed together, who diagnose and treat the case together, without withdrawal by or discharge of either, are both responsible if the treatment is

negligent. I instruct you that if you find that defendants were engaged independently to treat the plaintiff, then neither may be liable to the plaintiff for any act, omission or decision or for the negligence or lack of skill of the other. Physicians who are engaged to treat the same patient may make such division of service as in their judgment circumstances may require and in such case each in serving with the other is held answerable for his own conduct as well as for the wrongful acts or omissions, if any, of the other which he observes and lets go on without objection or which in the exercise of reasonable diligence under the circumstances he should have observed, but beyond this his liability does not extend to include negligence, if any, on the part of the other."

To this instruction the defendants excepted as follows:

"My next exception has to do with the written instruction appearing on page 13 of the instructions that has to do with the joint liability of physicians who are employed together, in which the Court says, 'You are instructed that physicians who are employed together, who diagnose and treat a case together, without withdrawal by or discharge of either, are both responsible if the treatment is negligent', and goes on to outline the circumstances where one physician under such a situation is liable for the errors or omissions of the other. This instruction is excepted to *on the ground that the fact that physicians are employed together does not cast vicarious liability on one for the conduct of the other*. There must be something more such as a partnership or a master and servant relationship or actual joint participation at the time in question in the particular error or omission of which complaint is made. That's all." (Emphasis added.)

The ground of defendants' exception was limited to the proposition that that part of the instruction stating

that physicians who are employed together are vicariously liable for the conduct of the other is an erroneous statement of law. Other grounds were stated in the briefs and at oral argument, but we will not consider those. *Meyers v. Muno*, 236 Or 68, 70-71, 386 P2d 808 (1963).

■ The issue is one aspect of the larger issue of when persons acting with some relationship to each other are vicariously liable for the negligence of the other. 3 Restatement, Torts § 876. Although two or more medical personnel treat the same patient, each is not liable for the acts of the other if he is acting "independently." *Giusti v. Weston Co.*, 165 Or 525, 536, 108 P2d 1010 (1941). A general practitioner or family physician who calls in a specialist to treat or perform surgery on a patient is not liable for the negligence of the specialist if there is no concert of action. For example, see *Mayer v. Hipke*, 183 Wis 382, 197 NW 333 (1924), and cases collected at 85 ALR2d 897-898 (1962).

■ That part of the instruction excepted to is not contrary to the above statements. The instruction can be paraphrased (not for the instruction of the jury): "Physicians acting in concert are liable for the negligence of the other."

The instruction was probably taken from *Bolles v. Kinton*, 83 Colo 147, 263 P 26, 27 (1928), which stated: "This treatment was made by them partly together, a little by Dr. Bolles and mostly by Dr. Sparks, but since, as shown above, they were employed by the patient together, made diagnosis together, and treated together, without withdrawal by or discharge of either, they must both be regarded as responsible for negligence if there was any." As defendants point out in

their brief, the facts in the Colorado case were different than those the jury might find in the present case; however, the legal principle stated is in accord with the general principles of vicarious liability and has been specifically applied in other malpractice cases.

In *Graddy v. New York Medical College,* 19 App Div2d 426, 243 NYS2d 940 (1963), the court stated: "Where physicians actually participate together in diagnosis and treatment, they may each incur a liability for the negligence of the other even though a more active part in the treatment may have been taken by one of them." The implications of such statement were refined by citing *Rodgers v. Canfield,* 272 Mich 562, 262 NW 409, 410 (1935). In the latter decision the court stated: "For their joint acts of commission or omission both defendants were liable; but any such act by one, in the absence of the other, *unless concerted,* could not be attributed to the nonparticipant." (Emphasis added.)

*Morrill v. Komasinski,* 256 Wis 417, 41 NW2d 620 (1950), has facts quite similar to those in this case. The court was not able to agree upon the fact issue of whether the family physician continued to act in concert with the specialist, but the entire court apparently accepted the proposition that if he did act in concert, he was liable for the specialist's negligence.

We hold the instruction was not objectionable.

The trial court instructed the jury as follows:

"The law does not require that a physician or surgeon shall possess and exercise the highest degree of learning and skill in his profession, but it requires that he shall possess and exercise that degree of skill and learning which conforms to the average or ordinary learning and skill in his pro-

fession in the same and similar communities. He is required to exercise reasonable care and diligence in the treatment of the case which he has under consideration. The law sets the standards of ordinary care, that is to say, the degree of skill which is possessed in practice and exercised by the average practitioner in his profession in good standing in the same or similar communities. He is presumed to know and to exercise the ordinary skill of his profession, and if a physician exercises that degree of skill in the treatment of a patient, he is not responsible for failure or success. *He must use his best judgment.* He must use diligence. He must use skill according to the standards I have given you, but if he has conformed to the standards of the law in that respect, he is not responsible for failure or success. By that standard you will measure the responsibility of the defendants in this case." (Emphasis added.)

Defendants excepted to the use of the sentence, "He must use his best judgment," contending it was erroneous and inconsistent with the previous statements that a physician need not use the highest skill, but only that degree of skill corresponding to that possessed by the average practitioner in the community.

■ "Judgment" and "skill" or "care" are not synonymous although the distinction between such terms is difficult to articulate. The hypothetical reasonable man, be he physician or car driver, frequently makes a choice between several alternative courses of action. The course chosen may lead to another's injury. If the hypothetical reasonable man makes the choice to the best of his ability, i.e., uses his best judgment, he is not negligent although injury results from his choice. 2 Harper and James, The Law of Torts, 906, § 16.4 (1956).

The use of the phrase "use his best judgment" is

not commended because of the difficulty in distinguishing "judgment" from "skill," but the use of the phrase is not error. The phrase was used in an instruction approved in *Carruthers v. Phillips,* 169 Or 636, 131 P2d 193 (1942); however this particular phrase was not in issue or commented upon.

■ The last assignment of error charged was the trial court's failure to give the following requested instruction:

> "Each of you should deliberate and vote on each issue to be decided. For example, let us assume that against your own personal judgment and vote, nine or more jurors might decide that plaintiff is entitled to recover damages. Even though that decision would have been against your personal vote, you will have both the right and duty to deliberate and vote on the question of the amount of damages."

The requested instruction is not a correct statement. If a juror votes that there is no liability, and nine or more jurors vote to the contrary, the dissenting juror's vote on damages is superfluous. *Munger v. State Ind. Acc. Com.,* 243 Or 419, 414 P2d 328 (1966); *Shultz v. Monterey,* 232 Or 421, 375 P2d 829 (1962); *Clark v. Strain,* 212 Or 357, 319 P2d 940 (1958).

Affirmed.