Argued June 7, reversed and remanded September 9, petition for
rehearing denied October 11, 1966

# HOLLIS *v.* FERGUSON

417 P. 2d 989

*William V. Deatherage,* Medford, argued the cause for appellant. On the briefs were Frohnmayer, Lowry & Deatherage, Medford.

*Hugh B. Collins,* Medford, argued the cause for respondent. On the brief were Collins & Redden, Medford.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

DENECKE, J.

The plaintiff, a 10-year-old girl, fell off her horse and broke her arm. The defendant, an osteopathic physician, initially treated her. The arm became infected with gas gangrene and had to be amputated. The plaintiff brought an action against the defendant physician alleging that he committed malpractice in his diagnosis and treatment which permitted the gangrene to develop. The jury returned a verdict for the defendant and plaintiff appeals.

Defendant's contention that the complaint does not state a cause of action has been answered in *Sprinkle v. Lemley*, 243 Or 521, 414 P2d 797 (1966), and *Orendino v. Clarke*, 240 Or 518, 519, 402 P2d 527 (1965).

The plaintiff charged that the defendant was negligent in the following particulars:

"(a) In attempting to treat and diagnose plaintiff without first obtaining a sufficient history to determine the nature and extent of the fracture;

"(b) In attempting to treat plaintiff without making an examination sufficient to determine the nature and extent of the fracture;

"(c) In failing to diagnose the fracture as a compound fracture;

"(d) *In failing to sufficiently open, bleed, swab, debride and clean the wound on plaintiff's arm near the point of the fracture so as to reasonably guard against infection;*

"(e) In failing to administer antibiotics and antitoxins which were reasonably necessary to protect plaintiff against danger from infection;

"(f) In treating the fracture as a simple fracture when defendant knew, or in the exercise of reasonable care should have known, that plaintiff had suffered a compound fracture;

"(g) In failing to refer plaintiff to a specialist when defendant knew, or in the exercise of reasonable care should have known, that he did not have the requisite training, knowledge and skill with which to treat plaintiff; and

"(h) In attempting to treat a compound fracture when defendant knew or, in the exercise of reasonable care, should have known, that he did not have the requisite skill, training and knowledge to treat such fracture." (Emphasis added.)

The trial court removed all these specifications from the jury except specification (d). The plaintiff assigns this action as error.

The plaintiff, Gloria Hollis, was injured about 6:30 on the evening of July fifth. Her mother immediately took her to Dr. Ferguson, who practices in a nearby small community in southern Oregon.

There was a wound on the arm near the fracture. Whether this wound was evidence of a "compound fracture" was a matter of controversy between the medical witnesses. Dr. Ferguson testified it was a small elliptical wound about a centimeter in length, "very minor" in depth and not a break in the fascia. There was testimony that the fascia is a layer of tissue below the skin which separates the skin from the bones, muscles and organs of the body. Dr. Ferguson was of the opinion that the wound did not create an opening from outside the body to the site of the fracture. Dr. Ferguson did not extend, deepen, or debride the area around the wound. A surgeon testified debridement was a surgical removal of dead tissue and foreign material and an enlarging of the wound to permit adequate exploration of the nature of the wound.

Dr. Ferguson testified the wound was bleeding profusely. The plaintiff's mother testified it did not bleed very much. Dr. Ferguson washed plaintiff's

entire arm and poured peroxide into the wound to cleanse it. He examined the wound by probing it with an applicator stick with a piece of cotton on the end.

The defendant set the fracture and casted it. The next day Dr. Ferguson discussed the case with Dr. Bolton, an orthopedic physician and surgeon, and the defendant decided Dr. Bolton should look at the girl to determine if "the bones were together."

Dr. Bolton saw her on July 7, about 36 hours after the fall. At his initial examination Gloria said her fingers were numb and she could not move them. Dr. Bolton opened the cast. Apparently, the wound showed nothing of significance; however, Gloria had a chill and to the doctor she was "obviously ill" and he sent her to the hospital. Upon examination there, little bubbles of air escaped with some of the fluid pressed from the wound; there was a lack of feeling in the arm starting at the wound; she had a high fever; her blood count showed an infection; and her urine was abnormal. At the initial debridement made in the hospital, grass was found deep in the wound, below the fascia. At this time Dr. Bolton was of the opinion that she probably had a gas infection. This was confirmed by laboratory studies. Subsequent surgery and treatment short of amputation could not successfully stop the infection.

Dr. Bolton diagnosed the fracture as a compound fracture with an opening through the skin and fascia to the site of the fracture. This is contrary to Dr. Ferguson's diagnosis. Dr. Bolton found the opening to be one caused by penetration and not by the deterioration of tissue caused by infection.

Dr. Ferguson testified he does not perform the open reduction necessary if there is a compound fracture. He refers such cases to orthopedic surgeons.

The medical witnesses who testified on behalf of plaintiff were of the opinion that the gas gangrene was caused by the compound fracture. They were also of the opinion that the gangrene came on because Dr. Ferguson negligently made an erroneous diagnosis of a simple, as distinguished from a compound, fracture and failed adequately to debride and cleanse the wound. They were of the opinion that were it not for these errors, it was "medically probable" there would not have been gas gangrene.

■ Defendant's counsel, upon cross-examination, weakened the opinions of the experts called by plaintiff upon the questions of medical probabilities, but as in *Sprinkle v. Lemley,* supra (414 P2d 797), there was evidence to make a jury question upon causation.

Turning to the specific allegations of negligence, we can find no evidence to support the first charge that Dr. Ferguson failed to obtain an adequate history. Specification (e) charges a failure to administer antibiotics, which the evidence indicates refers to penicillin. We find no opinion evidence that such a failure, if proved, was a cause of plaintiff's injuries, i.e., would have prevented the onslaught of the infection.

Specification (f) charges negligence in treating the fracture as a simple fracture when he should have known it was a compound fracture. We consider this repetitious of the charges of failure to diagnose the fracture as a compound fracture and failing to debride, etc.

■ Specifications (g) and (h) charge negligence in failing to refer the plaintiff to a specialist and in personally reducing the fracture. We consider these to be repetitious. There was no need to submit them both to the jury. However, Dr. Ferguson testified that he does not treat compound fractures and if he had known

this was a compound fracture he would have referred it to an orthopedist. This was evidence which required the trial court to refer either specification (g) or (h) for the jury's consideration and the court erred in failing to do so.

■ Specification (b) charges the defendant with being negligent in failing to make a sufficient examination to determine the extent of the fracture and specification (c) charges failure to make a proper diagnosis. These are duplicative as they both are basically concerned with the failure to determine that the wound penetrated from the outside to the site of the fracture, as the jury could have found. However, the court should have submitted one or the other charge to the jury.

■ This court has stated: "* * * a wrong diagnosis to be actionable must not only be negligent, but must also be followed by improper treatment to the injury of the plaintiff." *Willard v. Hutson,* 234 Or 148, 165, 378 P2d 966, 1 ALR3d 1092 (1963). This is merely an application of the general principle that in order for negligence to be actionable it must have caused injury. If an incorrect and negligent diagnosis results in no injury it is not actionable. *Huffman v. Lindquist,* 37 Cal2d 465, 475-476, 234 P2d 34, 29 ALR2d 485 (1951); *Hester v. Ford,* 221 Ala 592, 130 S 203, 206 (1930).

■ In this case there was evidence that Dr. Ferguson's diagnosis of this as a simple fracture without a penetration into the site of the fracture caused him to neglect to debride the wound. There was expert opinion that the failure to debride and otherwise cleanse the wound caused the onset of the infection.

The jury could have found from the evidence that Gloria did sustain a wound penetration to or from the site of the fracture and that Dr. Ferguson's failure to

diagnose it as such was negligence. One of the medical witnesses called by the defendant testified that if there was a penetration of the fascia, and there was evidence of such a penetration, "any high school girl could diagnose it [as a compound fracture]."

The trial court erred in withdrawing both charges (b) and (c) from the jury's consideration.

There were 22 other assignments of error. Some of the questions raised thereby have been answered by our decisions rendered subsequent to the trial. *Mayor v. Dowsett,* 240 Or 196, 400 P2d 234 (1965), and *Sprinkle v. Lemley,* supra (414 P2d 797). It is questionable whether others will arise again in a second trial if that occurs.

■ However, three assignments concern a procedure employed at the trial which we must proscribe. Defendant requested written instructions. The court prepared written instructions but merely handed them to the jury without reading them. The court did orally admonish the jury to read the instructions.

There is doubt whether plaintiff preserved this claimed error by a timely objection at the trial; therefore, it is questionable if it is reversible error. However, such a procedure should not be followed at any subsequent trial.

■ ORS 17.255(2) provides for written instructions.① It does not expressly state that written instruc-

---

① "If either party requires it, and at the commencement of the trial gave notice of his intention so to do, or if in the opinion of the court it is desirable, the charge of the court, in so far as it relates to the law and the facts of the case, shall be reduced to writing, and then given to the jury by the court, as written, without any oral explanation or addition. The charge, when so reduced to writing and given to the jury, shall be filed with the clerk. The jury shall take such written instructions with it while deliberating upon the verdict, and return them to the clerk immediately upon conclusion of its deliberations."

tions shall be read to the jury; however, we find that to be its intent, particularly in view of the long history in this jurisdiction of orally charging the jury, whether or not the instructions are reduced to writing. Reading the written instructions is a further precaution that the entire jury is informed of the content of the instructions.

Reversed and remanded.