Argued and submitted March 4, decision of Court of Appeals and judgment of circuit court reversed in part; case remanded to circuit court for further proceedings July 9, 1999

## William R. GRANEWICH, II,
*Petitioner on Review,*

*v.*

## Ben HARDING;
Jeannie Alexander-Hergert;
Founders Funding Group, Inc.,
an Oregon corporation,
*Defendants,*
*and*

## Michael J. FARRELL;
and Martin, Bischoff, Templeton, Langslet & Hoffman,
a partnership,
*Respondents on Review.*

(CC 9401-00097; CA A88174; SC S45041)

985 P2d 788

48

James R. Cartwright, Portland, argued the cause and filed the brief for petitioner on review.

Thomas W. Brown, Portland, argued the cause and filed the brief for respondents on review. With him on the brief were Wendy M. Margolis and Cosgrave, Vergeer & Kester, LLP, Portland.

Michael A. Greene, Portland, filed briefs for *amicus curiae* Oregon Trial Lawyers Association. With him on the March 16, 1998, brief was B. Carlton Grew, Portland. With him on the September 15, 1998, brief were Richard H. Braun and Rosenthal & Greene, PC, Portland.

Thomas W. Sondag, of Lane Powell Spears Lubersky LLP, Portland, filed the brief for *amicus curiae* Oregon Association of Defense Counsel.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.[**]

GILLETTE, J.

[**] Leeson and Riggs, JJ., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This is a civil action for damages based on allegations that the controlling shareholders and directors of a closely held corporation breached their fiduciary duties to plaintiff, a minority shareholder and director, through a corporate "squeeze-out." Plaintiff named as defendants the majority shareholders and directors, the corporation itself, the corporation's lawyer, and that lawyer's firm. As the case comes to us, all claims against the corporation and the shareholders have been dismissed, and only the allegations concerning the lawyers' role in the alleged squeeze-out are at issue.

The amended complaint alleges, among other things, that the controlling shareholders and directors amended the corporate by-laws to exclude plaintiff from the corporation and issued new shares of stock to themselves to dilute plaintiff's ownership interest in the corporation. The complaint also alleges that the lawyers are liable directly to plaintiff for breach of their own fiduciary duties to him as a director by assisting in those actions and that they are jointly liable with the majority shareholders and directors for breach of their fiduciary duties to him as a minority shareholder and director. The trial court dismissed the amended complaint as to the lawyers under ORCP 21 A(8) for failure to state a claim. A divided Court of Appeals, sitting en banc, affirmed that judgment, holding that the lawyers owed no direct fiduciary duty to plaintiff and that they could not be liable vicariously for the majority shareholders' and directors' alleged breach of fiduciary duty, if the lawyers themselves owed no such duty to plaintiff. *Granewich v. Harding*, 150 Or App 34, 945 P2d 1067 (1997).

Plaintiff seeks review of only that part of the Court of Appeals' decision that affirmed the trial court's judgment dismissing his claim against the lawyers. We limit our review accordingly. Because the case comes to us on an ORCP 21 A motion to dismiss, our only task at this stage is to determine whether the complaint adequately states a claim against the lawyers for joint tort liability for the alleged actions of the controlling shareholders and directors. We conclude that the amended complaint states a legally cognizable claim against

the lawyers as joint tortfeasors. We therefore reverse that part of the decision of the Court of Appeals.

■ In determining the sufficiency of plaintiff's complaint, we accept as true all well-pleaded allegations in the complaint and give plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged. *Fearing v. Bucher*, 328 Or 367, 371, 977 P2d 1163 (1999).

The amended complaint alleges the following facts: Founders Funding Group, Inc. (FFG) was incorporated in 1992. By early 1993, plaintiff and defendants Harding and Alexander-Hergert each owned one-third of the shares of FFG stock. Plaintiff, Harding, and Alexander-Hergert all were directors and officers of FFG as well as its employees. All three agreed initially that each would receive inadequate compensation for their respective services to the company but that each would receive the same amount of compensation from FFG, with the expectation and agreement that each ultimately would receive ample compensation for his or her efforts. They also agreed that each would be employed continually and perpetually by the corporation, with salaries and benefits commensurate with their services to it.

After a short time, FFG's business became substantially more successful and profitable. The complaint alleges that, at that point, Harding and Alexander-Hergert devised a plan to squeeze plaintiff out of the corporation. On May 5, 1993, they met with plaintiff and informed him that they had removed him as a director of FFG, relieved him of his executive position, and terminated him as an employee, all effective immediately. Plaintiff objected on the grounds that he had not received proper notice of any shareholders' or directors' meeting as required by FFG's bylaws, that his position as a director was protected by the cumulative voting requirements of the bylaws, that the actions of Harding and Alexander-Hergert represented a breach of the agreement between plaintiff and the others that each would be employed perpetually and continually by FFG, and that those actions represented a breach of the fiduciary duty that Harding and Alexander-Hergert owed to plaintiff by virtue of their ownership of two-thirds of the corporation's stock and their holding of two out of three positions on FFG's board of directors.

Soon thereafter, Harding and Alexander-Hergert, in their corporate capacities, met with and hired lawyer Farrell and his law firm, Martin, Bischoff, Templeton, Langslet & Hoffman (collectively, the lawyers), to provide legal services to the corporation. The complaint alleges that the lawyers then entered into an agreement with Harding and Alexander-Hergert to assist them in depriving plaintiff of his position as a director, of the value of his shares of stock, of his further employment with and compensation from FFG, and of the benefits of participating in the corporate affairs of FFG. The complaint alleges that, at all material times, the lawyers knew that the purpose of that agreement was to violate Harding's and Alexander-Hergert's fiduciary duties to plaintiff. Additionally, the complaint alleges that FFG itself "had no legitimate corporate interest in resolving the disputes between plaintiff * * * and defendants Harding and Alexander[-Hergert] in a manner which favored defendants Harding and Alexander[-Hergert] over plaintiff * * *."

The lawyers are alleged to have assisted Harding and Alexander-Hergert by drafting and sending two letters to plaintiff, at Harding's and Alexander-Hergert's request, containing statements that the lawyers knew to be false concerning the effectiveness of Harding's and Alexander-Hergert's previous efforts to remove plaintiff from the corporation. It also is alleged that, in their further efforts toward the same end, the lawyers knowingly provided legal assistance to Harding and Alexander-Hergert that substantially assisted Harding and Alexander-Hergert in breaching the fiduciary duties that they allegedly owed to plaintiff. Specifically, the complaint alleges that the lawyers assisted Harding and Alexander-Hergert in exercising actual control of the management and policies of FFG in ways inconsistent with their claimed fiduciary duties by calling special meetings, amending corporate bylaws, removing plaintiff as a director, and taking other actions to dilute the value of plaintiff's FFG stock. Finally, the complaint alleges that the lawyers' actions were outside the scope of any legitimate employment by FFG and that plaintiff suffered damages as a consequence of those actions.

The foregoing allegations concerning the role of the lawyers are set out or incorporated by reference in two claims

for relief in the amended complaint. In analyzing the sufficiency of the specific allegations, the Court of Appeals considered whether those allegations constituted a legally cognizable claim under either a "conspiracy" or an "aid and assist" theory of joint liability. *Granewich*, 150 Or App at 38-49.

As a preliminary matter, defendant lawyers argue that the Court of Appeals erred in considering the "aid and assist" theory and urge this court not to address it, on the ground that plaintiff neither mentioned "aid and assist" as a separate theory of recovery in the complaint nor argued it below. Therefore, defendant lawyers argue, the matter is not preserved.[1]

■ Defendant lawyers' argument is not well taken. For reasons explained more fully below, neither "conspiracy" nor "aid and assist" is a separate theory of recovery. *See Bonds v. Landers*, 279 Or 169, 175, 566 P2d 513 (1977) (so explaining with respect to "conspiracy"); *Bliss v. Southern Pacific Co.*, 212 Or 634, 642, 321 P2d 324 (1958) (same). Rather, conspiracy to commit or aiding and assisting in the commission of a tort are two of several ways in which a person may become jointly liable for another's tortious conduct.

■ Section 876 of the *Restatement (Second) of Torts* (1979) (*Restatement*) sets out three ways in which persons acting in concert may be held accountable for each other's tortious conduct:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> "(a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> "(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> "(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately

---

[1] Defendant lawyers' position apparently arises out of the fact that plaintiff employed the label, "conspiracy," in the headings preceding the two claims for relief. The label, however, is irrelevant; what matters, for our purposes, is the specific allegations following those labels.

considered, constitutes a breach of duty to the third person."

Each of the three foregoing statements already is reflected in existing Oregon case law governing the liability of persons acting in concert. Therefore, to state that this court recognizes section 876 as reflecting the common law of Oregon breaks no new ground. For example, this court's decision in *Sprinkle v. Lemley*, 243 Or 521, 414 P2d 797 (1966), embodies the principle set out in subsection(a) of section 876. *Sprinkle* was a case in which a patient injured by a doctor's negligence sued both the general practitioner who treated her for her injuries and the specialist called in to assist him. The court there stated that persons acting in concert can be liable to a third person for harm resulting from the other's negligence, but one is not liable for the acts of another if each is acting independently. *Id.* at 528 (citing generally to a substantially similar prior version of section 876, *Restatement of Torts* § 876 (1939)).

Additionally, as early as the turn of the century, the court stated in *Perkins v. McCullough*, 36 Or 146, 59 P 182 (1899), that

> " 'all who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done the same tort with their own hands.' "

*Id.* at 149 (quoting *Judson v. Cook*, 11 Barb 642 (NY 1852)). That principle is reflected in section 876(b) of the *Restatement*, a prior version of which this court quoted with approval in *Lemons v. Kelly*, 239 Or 354, 359, 397 P2d 784 (1964).

Finally, the principle articulated in subsection (c) of section 876 of the *Restatement* is exemplified by this court's decision in *Blank v. Far West Federal Savings*, 281 Or 397, 575 P2d 148 (1978). The plaintiff in *Blank* was a real estate broker with an exclusive listing agreement who contractually was entitled to a commission from the sale of certain real estate. Each defendant agreed to a scheme to induce plaintiff to cancel the agreement before the closing of a sale on the property to avoid paying the commission. The court held that

each defendant participated in all or different acts of the fraud, either by failing to disclose the imminent sale or by affirmatively averring that no such sale was pending. *Id.* at 408. All were obligated to deal truthfully and fairly with plaintiff and all, therefore, jointly were liable to plaintiff for the harm done to him. *Ibid.*

■ The court did not employ the words "conspire" or "conspiracy" in *Lemons, Sprinkle,* or *Perkins,* nor did it expressly examine or purport to delineate in any of those cases whether particular elements that must be pled to state a claim for relief under a "conspiracy" theory were present. As noted, *Bonds* and *Bliss,* among other cases, hold that a "conspiracy" is not, standing alone, a tort. Nonetheless, each case proceeded under the same fundamental assumption for assessing the liability of persons acting in concert, *i.e.,* that, under certain circumstances, it is permissible to impute the tortious acts of one defendant to others acting in concert with that defendant.

■ We conclude that persons acting in concert may be liable jointly for one another's torts under any one of the three theories identified in *Restatement* section 876.[2] *See Gabriel v. Collier,* 146 Or 247, 255, 29 P2d 1025 (1934) (conspiracy allegations serve "to connect a defendant with the transaction and to charge him with the acts and declarations

---

[2] The fact that "aiding and assisting" is not a theory of recovery separate from the theory of liability for persons acting in concert that we have discussed perhaps is best illustrated by extending one of the examples that the Court of Appeals borrowed from the *Restatement* to explain the concept of joint liability for tortious acts done in concert, in the context of its discussion of the adequacy of the complaint's allegation under a conspiracy theory. The court posited the following:

"A, B, C, and D come together to E's house at night to rob. A breaks E's front door, B ties E up, C beats E and D steals and carries away E's jewelry. A, B, C and D are all subject to liability to E for all damages caused by the trespass to land, the false imprisonment, the battery and the conversion."

*Granewich,* 150 Or App at 41 n 5 (quoting *Restatement (Second) of Torts* § 876(a), illustration 1 (1979)). We would add that, if another individual, F, also agrees to the plan, then drives A, B, C, and D to E's house, waits outside while they commit trespass, false imprisonment, battery and conversion, and drives A, B, C, and D away from E's house, F also is liable equally for all the others' torts, even though his role can be described only as knowingly providing substantial assistance in the commission of those torts. In that light, defendant lawyers' complaint that plaintiff did not cite cases supporting an "aid and assist" theory either to the trial court or to the Court of Appeals is irrelevant.

of his co-conspirators, without which he would not be implicated").[3] It follows that the Court of Appeals did not err in considering whether the lawyers jointly could be liable for the breach of fiduciary duty, either by doing a tortious act in concert with the others, as described in section 876(a) of the *Restatement*, or by knowingly providing substantial assistance to the others in their commission of that tort, as described in section 876(b). We turn to that issue.

■■ There is no Oregon law directly addressing whether someone can be held liable for another's breach of fiduciary duty. Legal authorities, however, virtually are unanimous in expressing the proposition that one who knowingly aids another in the breach of a fiduciary duty is liable to the one harmed thereby.[4] That principle readily extends to lawyers.[5] None of those authorities even implies that liability for participants in the breach of fiduciary duty is confined to those who *themselves* owe such duty.

---

[3] In concluding that the "aid and assist" theory, as it was described by the Court of Appeals below, is merely a subcategory of a broader theory of vicarious *tort* liability, we are mindful that "conspiracy" and "aiding and abetting" are two separate and distinct notions in the *criminal* context. *See, e.g.*, ORS 161.155 (establishing criminal liability for aiding and abetting in the planning or commission of a crime); ORS 161.450 (describing criminal conspiracy).

[4] *See, e.g.*, *Restatement (Second) of Torts* § 874 (1979), comment c ("A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused."); *Restatement (Second) of Trusts* § 326 (1959) ("A third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust."); V Scott and Fratcher, *The Law of Trusts* § 506 (4th ed 1989) ("When a person in a fiduciary relationship to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary.").

[5] IV Scott and Fratcher, *The Law of Trusts* § 326.4 (4th ed 1989) ("If a trustee in the administration of the trust employs an attorney or other agent, and the trustee commits a breach of trust, the agent is not under a liability to the beneficiaries of the trust for participation in the breach of trust, unless he knew or should have known that he was assisting the trustee to commit a breach of trust."). That principle is consistent with the rule that lawyers generally are not liable to third parties for acts committed in good faith in performance of their professional activities as lawyers for clients, but that they may not knowingly assist in the commission of a tort. *See, e.g.*, *Wampler v. Palmerton*, 250 Or 65, 74-75, 439 P2d 601 (1968) (agent generally immune from liability for action taken within the range of his authority for the benefit of the principal); Mallen and Smith, *Legal Malpractice* § 6.4 (4th ed 1996) (wrongs attributed to lawyer as client's agent in providing advice to further client's objectives do not support a conspiracy, but lawyer may be liable for assisting in the commission of a tort).

 Nothing in this court's prior decisions compels a different conclusion in this case. Indeed, the theory behind joint liability is that persons acting in concert are liable for all the acts done in furtherance of the conspiracy. As the minority opinion in the Court of Appeals correctly notes, "[c]ivil conspiracy does not merely allow *possible* tortfeasors to be held liable for a co-conspirator's tort; it makes joint tortfeasors of those who conspire to commit the tort." *Granewich*, 150 Or App at 51 (Armstrong, J., concurring in part and dissenting in part) (emphasis in original). Indeed, it especially would be odd for the law to afford beneficiaries of *fiduciary* relationships less protection from the malfeasance of third parties than would be available to the victims of other kinds of tortious conduct. We hold, therefore, that a defendant personally need not have committed a tortious act as a prerequisite to liability for acting in concert with another person who did commit that tortious act.

In reaching a contrary conclusion, the Court of Appeals found dispositive the absence of any duty flowing directly from the lawyers to plaintiff. That court stated that "because the tort of breach of fiduciary duty depends on a duty that the law implies from a fiduciary relationship between the parties, it necessarily follows that a fiduciary relationship must exist between the plaintiff and all joint tortfeasors." *Granewich*, 150 Or App at 41. That conclusion was based, in part, on the court's interpretation of section 876(a) of the *Restatement*, which provides that an actor's liability can be based on the commission of "a tortious act in concert with" another. According to the Court of Appeals, even if Harding's and Alexander-Hergert's acts were imputed to the lawyers, the lawyers' conduct still cannot be viewed as tortious as to plaintiff, because the lawyers themselves owed no fiduciary duty to plaintiff.

That analysis is faulty for two reasons. First, interpreting the term, "tortious act," in the way that the Court of Appeals' majority did requires, in the traditional tort law vernacular, that the actor owe a duty of care to the third person. Thus, that interpretation erroneously fuses together the elements of liability set out in subsection 876(a) with those in subsection 876(c), which outlines liability for persons who

assist in the accomplishment of a tortious result in circumstances where their "own conduct, separately considered, constitutes a breach of duty to the third person." Such an approach would render subsection (c) surplusage.

■■ Second, the Court of Appeals' analysis relies on the premise that, under subsection 876(a), each actor's conduct itself must constitute a tort before liability attaches. That reliance is misplaced. This court previously has suggested that a plaintiff need not establish that each person acting in concert himself committed a tort. In *Still v. Benton*, 251 Or 463, 466, 445 P2d 492 (1968), the court stated that,

> "[w]hen a plaintiff alleges and proves that several defendants conspired to commit a tort upon him, all the defendants involved in the conspiracy can be held liable for the overt act which is committed by one of the defendants pursuant to the conspiracy. If a conspiracy is not proved, only those defendants can be held liable who are alleged and proved to have personally committed a tortious overt act against the plaintiff."

That statement necessarily assumes that not all persons acting in concert need to have committed an overt tortious act against the plaintiff.[6]

The Court of Appeals also declined to rule that lawyers can be held liable as co-conspirators merely for aiding and assisting in the commission of the tort of breach of fiduciary duty, on the ground that it unduly would interfere with lawyer-client relations if lawyers could be held liable for actions performed on behalf of their clients that only indirectly result in their clients' breach of their fiduciary duties. *Granewich*, 150 Or App at 48. In that regard, we note that the Court of Appeals interchangeably refers to Harding and Alexander-Hergert and to the corporation as the lawyers' clients. The complaint, however, alleges that the corporation

---

[6] Our example of the participants in the break-in, set out in note 2, above, serves to illustrate the point. F, whose participation is confined to agreeing to the unlawful scheme and driving the others to and from E's house, is fully liable for all of his co-conspirators' "tortious overt acts," notwithstanding the fact that he himself committed no tort. If, however, a conspiracy is not proven (for example, if E cannot show that F knew what A, B, C, and D planned to do), then only those who themselves committed tortious overt acts (A, B, C, and D in the foregoing example) are liable to E.

hired the lawyers, that the corporation had no interest in the dispute between plaintiff and Harding and Alexander-Hergert, and that the work that the lawyers performed was outside the scope of any legitimate employment on behalf of the corporation. We must accept those allegations as true for purposes of our analysis. Under that circumstance, the lawyers stand in no different position in relation to plaintiff than anyone else, and their status as lawyers is irrelevant.[7]

■ Viewed in light of the foregoing discussion, the amended complaint adequately alleges joint liability on the part of defendant lawyers as persons acting in concert with Harding's and Alexander-Hergert's alleged breach of their fiduciary duties to plaintiff, if it contains allegations that give rise to the inference either that the lawyers did a tortious act pursuant to an agreement with the others to breach their fiduciary duties or that the lawyers knowingly provided substantial assistance in the breach of the others' fiduciary duties.

We conclude that the amended complaint contains such allegations. The complaint alleges that the lawyers entered into an agreement with Harding and Alexander-Hergert to take such actions as may be necessary to squeeze plaintiff out of FFG and to deprive plaintiff of the value of his FFG stock, objectives that are alleged to be in breach of Harding's and Alexander-Hergert's fiduciary duties to plaintiff as majority shareholders and directors. The complaint further alleges that Harding and Alexander-Hergert undertook multiple unlawful steps in furtherance of those objectives and that plaintiff was damaged as a result. In addition, the amended complaint alleges that the lawyers knew that the object to be accomplished was the breach of Harding's and Alexander-Hergert's fiduciary duties to plaintiff, that the lawyers provided substantial assistance to them in their efforts in that regard, and that plaintiff was damaged as a result.

---

[7] We do not suggest, by drawing this distinction, that it necessarily matters that the corporation, rather than Harding and Alexander-Hergert, was the client. We note only that, on those allegations, the dilemma posed by the Court of Appeals is not presented.

The amended complaint states a claim against the lawyers for joint liability, based on their alleged participation with other defendants in breaching fiduciary duties owed to plaintiff. The trial court erred in ruling to the contrary, and the Court of Appeals erred in affirming that ruling.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part. The case is remanded to the circuit court for further proceedings.