Argued and submitted July 25, reversed and remanded November 23, 2005

Margaret Ruth McDONALD,
personal representative of the
Estate of Katana Vollmer, deceased,
*Appellant,*

*v.*

Dennis SARRIUGARTE,
*Respondent.*

Dennis SARRIUGARTE,
*Third-Party Plaintiff,*

*v.*

Diane R. LUSK,
personal representative of the
Estate of Navita H. Vollmer, deceased,
*Third-Party Defendant.*

03-10244; A125704

124 P3d 614

Michael T. Wise argued the cause for appellant. With him on the briefs was Michael Wise & Associates, P.C.

Dennis W. Percell argued the cause for respondent. With him on the brief was Arnold Gallagher Saydack Percell Roberts & Potter, P. C.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

SCHUMAN, P. J.

---

* Landau, J. *vice* Richardson, S. J.

## SCHUMAN, P. J.

Six-year-old Katana Vollmer, riding in a car driven by her mother, died when that car veered off a road in Benton County and fell into the Willamette River. Plaintiff, the personal representative of the child's estate, brought this action on her behalf against defendant, the driver of another car, arguing that defendant's negligent driving was a substantial contributing factor to the accident and the child's death. The trial court granted summary judgment in favor of defendant. Plaintiff appeals, arguing that the record presented issues of material fact. We agree and reverse.

The facts and reasonable inferences drawn from them, viewed in the light most favorable to plaintiff, *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001), are as follows. One morning in the spring of 2002, decedent's mother (Vollmer) pulled her Jaguar out of a driveway onto Spring Hill Road and turned south toward Albany. The child was a passenger. Defendant was approximately 150 feet behind her in his Toyota Spyder, also southbound. Defendant thought Vollmer was driving too slowly, so he passed her.

At that moment, A.K. Wood-Rum was driving northbound on Spring Hill Road. He saw defendant's car traveling toward him at a high rate of speed—he estimated 80 miles per hour. To avoid colliding with defendant, Wood-Rum slowed down and pulled to the side of the road. From that vantage, he saw Vollmer's car approximately three car-lengths behind defendant's, also traveling at 80 miles per hour. Defendant had just overtaken and passed Vollmer and was in the process of pulling back into the southbound lane. According to Wood-Rum, defendant's car seemed out of control. Vollmer's car then slowed; according to Wood-Rum, "The Jaguar hit the binders. The wheel went up. She turned the wheel. She was fighting the wheel." Vollmer's car then "came back and forth across the road about six times. Each time it went, the rear end got more accentuated." Wood-Rum saw Vollmer throw her hands into the air just before the Jaguar disappeared out of sight and plunged into the Willamette

River. Both Vollmer and the decedent were killed in the accident.

Plaintiff's complaint alleged that defendant's driving was negligent in one or more of six particulars, each of which substantially contributed to the accident. Five of them amount to general allegations of bad driving: speeding, failing to maintain control, failing to maintain a proper lookout, forcing Vollmer's car off the road, and failing to avoid forcing Vollmer's car off the road. The sixth particular asserted that Vollmer and defendant were "racing."

After discovery was complete, and based on depositions and affidavits, defendant moved for summary judgment on two grounds: first, that plaintiff presented no evidence to support her claim that defendant's driving was a contributing factor to the death of decedent; and, second, that plaintiff presented no evidence to support her claim that the two vehicles were racing. The trial court granted defendant's motion, explaining in a letter opinion that the evidence established only three relevant admissible facts: defendant was speeding; defendant's vehicle " 'was all over the highway' " as he tried to regain control; and Vollmer's Jaguar, immediately before it left the road, was closely following defendant's car. The trial court indicated that Wood-Rum's statement, that defendant's "radical maneuver" in merging back into the southbound lane contributed to Vollmer's loss of control, constituted speculation and conjecture and therefore was not admissible under OEC 701.[1] Based on what it regarded as the admissible evidence, the trial court concluded that plaintiff had not raised an issue of material fact regarding causation. Taking guidance from *Harris v. Kissling*, 80 Or App 5, 9, 721 P2d 838 (1986), the trial court reasoned that "the evidence must be sufficient to establish that the [causal] relationship is reasonably probable, not simply possible." The

---

[1] OEC 701 states:

"If the witness is not testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are:

"(1) Rationally based on the perception of the witness; and

"(2) Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

trial court also wrote that plaintiff had not offered any evidence beyond Wood-Rum's inadmissible speculation to suggest that the vehicles were racing or "were otherwise engaged in 'tortious conduct in concert or pursuant to a common design.' "[2]

■ It appears to us that the trial court made two errors. First, its list of the admissible facts omitted some important ones that are uncontested. From the depositions and affidavits, these crucial facts, combined with the ones that the court did list, can be summarized as follows: Defendant was speeding when he passed Vollmer. He cut back into her lane after he completed the pass and then lost control of his car. At that moment, Vollmer's car, following closely behind defendant's, slowed and went out of control.

Second, the trial court seems to have treated reasonable inferences that a factfinder could draw from those facts (which must be considered) as though they were mere speculative inferences that the witness presented (which must not). The court deemed inadmissible Wood-Rum's speculation that Vollmer applied the brakes because defendant cut her off, as well as his speculation that Vollmer and defendant were "racing." Those admissibility decisions may or may not have been correct applications of OEC 701, but there can be no dispute that, based on the nonspeculative facts listed above, a factfinder, with or without the benefit of Wood-Rum's speculation, could reasonably reach the same conclusions. Defendant passed Vollmer, he cut into her lane, her car slowed and went out of control—the inference that she braked and lost control *because* he cut her off is at least reasonable. The facts and reasonable inferences, then, are sufficient to allow a rational factfinder to find that, more probably than not, defendant's driving contributed substantially to the accident and consequent fatality. *Carlson v. The May Dept. Stores*, 270 Or 289, 292, 527 P2d 252 (1974)

---

[2] The internally quoted phrase is an apparent reference to *Restatement (Second) of Torts* § 876 (1979) as referred to and endorsed in *Granewich v. Harding*, 329 Or 47, 53, 985 P2d 788 (1999). That section provides, in part:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

"(a) does a tortious act in concert with the other or pursuant to a common design with him[.]"

("[N]egligence and causation may be proven by circumstantial evidence" so long as "there is a rational basis for concluding that it was more probable than not that defendant's negligence caused plaintiff's injury.").

■        Further, consistently with the analysis of so-called "racing" in *Slagle v. Hubbard*, 176 Or App 1, 29 P3d 1195 (2001), *adh'd to on recons*, 178 Or App 632, 37 P3d 256, *rev den*, 334 Or 260, 47 P3d 486 (2002), a factfinder could find that Vollmer and defendant were engaging in that activity. In *Slagle*, this court held that "racing" for purposes of imposing joint liability on a participant does not necessarily require either a head-to-head competition between the racers nor an explicit agreement between them. *Id.* at 7-8. Rather, racing includes driving at a high rate of speed and can occur without explicit, prearranged agreement, so long as there is action "performed in unison" or "done together." *Id.* at 5-6 (citations omitted). The evidence in this case, read in the light most favorable to plaintiff, establishes that two high-performance automobiles were traveling in close proximity to each other at 80 miles per hour on a curving rural road, one automobile having just overtaken the other. A reasonable factfinder could find that such an activity was "racing." We conclude, therefore, that the trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded.