Argued and submitted October 19, 2004, judgment on claims for breach of fiduciary duty and breach of duty of good faith and fair dealing reversed and remanded; otherwise affirmed February 16, 2005

Diane REYNOLDS,
as personal representative of
the Estate of Clyde G. Reynolds,
*Appellant,*

*v.*

Donna SCHROCK,
fka Donna Frechette,
*Defendant,*

*and*

Charles MARKLEY
and Greene & Markley, PC,
an Oregon professional corporation,
*Respondents.*

C991357CV; A119200

107 P3d 52

James E. Leuenberger argued the cause and filed the briefs for appellant.

Michael T. Stone argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Reynolds[1] brought this action alleging contract and tort claims against defendant Schrock, who was Reynolds's joint venturer in a real estate investment, and tort claims against Markley,[2] the lawyer who represented Schrock in a transaction involving that investment. Plaintiff and Schrock settled their claims, and Schrock was dismissed from the case. The trial court granted Markley's motion for summary judgment as to plaintiff's claims against him. Plaintiff appeals, and we reverse.

## I.  BACKGROUND

Viewed in the light most favorable to plaintiff, who was the nonmoving party, ORCP 47 C, the facts are as follows. Reynolds was a naturopath and Schrock was one of his patients. In addition to that provider-patient relationship, they also had a business relationship, together purchasing two parcels of real estate. On one parcel was timber, which they considered harvesting and selling for profit; the other parcel was known as the "lodge property" and was held for recreational purposes. Each party had a one-half interest in each parcel. Reynolds's total investment in the parcels amounted to $500,000.

A dispute arose concerning the land, and Schrock sued Reynolds. Shortly thereafter, Schrock also sued Reynolds for alleged sexual impropriety stemming from the provider-patient relationship. The cases were consolidated, and the parties reached a settlement that was designed to dispose of all the claims in both of the cases. Markley, as Schrock's attorney, assisted in negotiating and drafting the settlement agreement.

---

[1] Clyde G. Reynolds initiated this action but died while it was in trial. Diane Reynolds continued the action as the personal representative of his estate. *See* ORAP 8.10(1); ORCP 34 B(1) (permitting substitution of parties). We refer to the personal representative as plaintiff and to the deceased as Reynolds.

[2] We refer to defendants Charles Markley and Greene & Markley, P.C., the law firm in which he is a partner, as "Markley."

The agreement was complex but, as relevant to this case, it called for Reynolds to convey his interest in the lodge property to Schrock. In return, Reynolds was to receive the proceeds from the sale of the timber property, which the agreement called for the parties to sell, thereby leaving Schrock with sole ownership of the lodge parcel and no proceeds from the timber parcel, while Reynolds would have no interest in either parcel but all of the proceeds from the sale of the timber parcel. In order for that solution to compensate Reynolds fairly, however, the sale of the timber parcel had to yield $500,000; if it yielded less, Reynolds would not regain his investment. In anticipation of that possibility, the settlement provided that, if the timber property yielded less than $500,000, Schrock would pay Reynolds any deficiency, and Reynolds would hold a security interest in the lodge property to secure that obligation. If the net sale proceeds for the timber property exceeded $500,000, Reynolds would not retain any security interest in the lodge property.

Reynolds deeded his interest in the lodge property to Schrock, as contemplated under the settlement agreement. Markely, meanwhile, advised Schrock that, as he interpreted the settlement agreement, once she received Reynolds's interest, she could dispose of the lodge property in whatever way she wished; that is, she was not obligated to keep it for the purpose of securing a possible deficiency owed to Reynolds in the event that the timber property sale yielded less than $500,000. Schrock, with assistance from Markley, then sold the lodge property to a third party. Apparently fearing that Reynolds might attempt to protect his investment by interfering with the sale, Markley asked the escrow officer who handled it to refrain from giving Reynolds any information about it, and, in fact, the sale occurred without Reynolds's knowledge. For his services rendered in handling the transaction, Markley received $135,111.71. Schrock's share was $209,440.68. Schrock subsequently prevented the sale of the timber property. As a result, Schrock ended up with over $200,000 in cash from sale of the lodge property. Markley ended up with his six-figure attorney fee. Reynolds, expecting the return of his $500,000 investment, ended up with his unsecured interest in the timber property.

Reynolds sued Schrock and Markley, asserting, among other claims, breach of fiduciary duty[3] and conversion. Specifically, Reynolds alleged that Schrock had a fiduciary duty to retain the lodge parcel in case it was required to offset any deficiency owed to Reynolds resulting from sale of the timber property for less than $500,000. The duty was fiduciary because it derived from an agreement to wind down the joint venture. In the conversion claim, Reynolds alleged that Schrock converted his purported "unrecordable security interest" in the lodge property when she sold the parcel. Markley incurred joint liability for Schrock's breach and conversion, according to Reynolds's complaint, because he substantially assisted in the sale.

Markley moved for summary judgment on Reynolds's claims against him. The trial court granted the motion, holding that, even though Schrock "probably" had a fiduciary duty to Reynolds in the performance of events contemplated by the settlement agreement, Markley did not owe such a duty independently, nor was he jointly liable. The trial court also determined that Markley was not jointly liable for conversion because he was only "reasonably advising his * * * client regarding the interpretation of a contract." This appeal ensued.

## II. BREACH OF FIDUCIARY DUTY

### A. *Schrock's fiduciary duty to Reynolds*

■ Whether Markley can be jointly liable for Schrock's breach of fiduciary duty to Reynolds depends initially on whether, in fact, Schrock had such a duty. We conclude that she did. The relevant historical facts are undisputed; whether those facts support the conclusion that a fiduciary exists is a question of law. *See Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 519, 852 P2d 960 (1993), *rev den*, 318 Or 459 (1994).

---

[3] Plaintiff alleged claims for both breach of fiduciary duty and breach of a duty of good faith and fair dealing. Both claims arise from the joint venture, wherein the coventurers are fiduciaries to each other and for that reason owe duties of good faith and fair dealing. *McIver v. Norman*, 187 Or 516, 536, 213 P2d 144 (1949). Because the parties make no significant distinction between the two claims (even though one is in contract and the other in tort), we treat them as a single claim for breach of fiduciary duty.

■ The record indicates that Reynolds and Schrock jointly held the timber property as part of a business plan. In that context, each had a fiduciary duty to the other. *Commerce Mortgage Co. v. Industrial Park Co.*, 101 Or App 345, 352-53, 791 P2d 132, *adh'd to as modified on recons*, 102 Or App 284, 793 P2d 894 (1990), *rev den*, 311 Or 87 (1991) ("Partners in a joint venture owe a fiduciary duty to one another [which includes duties] of loyalty, fair dealing and full disclosure in all matters [a]ffecting the conduct of the venture's business.") (bracketed material added; internal quotation marks and citation omitted).

As noted above, a dispute arose concerning the timber and lodge properties, and Schrock sued Reynolds. That suit was consolidated with Schrock's other suit against Reynolds for molestation, and the settlement agreement resolved the consolidated case. Reynolds characterizes that settlement agreement as a blueprint for the "winding up" of the joint timber property venture and argues that the parties would owe fiduciary duties until the venture was finally complete. Thus, according to Reynolds, the settlement agreement was not a typical arm's-length contract matter under which the parties would not owe fiduciary duties. We agree. The record indicates that the settlement agreement, although it resolved another dispute not involving the joint venture, was also designed to allow the parties finally to dispose of their jointly owned interests and terminate their business dealings.

■ The duties of joint venturers to each other continue "until the relationship is terminated, even in the face of strained relations between them or the existence of conditions that might justify the venture's dissolution." *Commerce Mortgage Co.*, 101 Or App at 353; *see also Fouchek v. Janicek*, 190 Or 251, 273, 225 P2d 783 (1950) ("The fiduciary obligations of a partner remain until the relationship is terminated."). Here, the settlement agreement wound up the venture, and, during that process, each party owed a fiduciary duty to the other not to thwart the completion of the dissolution. *See Commerce Mortgage Co.*, 101 Or App at 353. That duty included a duty not to interfere with the orderly disposition of the jointly held timber property and the return of capital that Reynolds contributed to the venture.

## B.  *Markley's joint liability to Reynolds*

■      The precise legal issue at the core of this dispute is whether an attorney can be jointly liable to a third party toward whom the attorney's client, but not the attorney, owes a fiduciary duty if the attorney, knowing of the client's fiduciary duty, substantially aids, encourages, or acts in concert with the client in the client's breach of that fiduciary duty. The parties agree that, in such a situation, the attorney owes no primary fiduciary duty to the third party; the argument centers, rather, on whether the attorney shares the client's culpability and is liable more or less as an accessory. Reynolds contends that such liability can exist; Markley contends that it cannot. Both parties' arguments focus on *Granewich v. Harding*, 329 Or 47, 985 P2d 788 (1999).

The plaintiff in that case, the minority shareholder in a corporation, brought an action against the corporation, its majority shareholders, and its attorney for breach of fiduciary duty. The plaintiff alleged that the corporation's attorney was jointly liable for the majority shareholders' breach because he assisted in the ousting of the minority shareholder and the devaluation of his stock with knowledge that those actions constituted a breach of the majority shareholders' fiduciary duty. *Id.* at 50-52. The question before the court was whether, under Oregon law, the corporation's attorney could be jointly liable for breach of fiduciary duty by assisting the majority shareholders in the "squeeze out" even though the attorney had no independent fiduciary duty to the plaintiff. *Id.* at 53.

The trial court dismissed the plaintiff's complaint for failure to state a claim. *Id.* at 50. This court, in a divided en banc opinion, affirmed. *Granewich v. Harding*, 150 Or App 34, 945 P2d 1067 (1997). The Supreme Court reversed, holding that the corporation's attorney could be jointly liable with the majority shareholders for the breach of fiduciary duty and that, therefore, the plaintiff had stated a claim. *Granewich*, 329 Or at 59. The court began its analysis by reciting section 876 of the *Restatement (Second) of Torts* (1979) (*Restatement*), which describes three ways that an individual acting in concert with another may be liable for the other's tortious conduct:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

"(a)   does a tortious act in concert with the other or pursuant to a common design with him, or

"(b)   knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

"(c)   gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

Citing *Sprinkle v. Lemley*, 243 Or 521, 528, 414 P2d 797 (1966), and *Lemons v. Kelly*, 239 Or 354, 359, 397 P2d 784 (1964), the court explained that "[e]ach of the three foregoing statements already is reflected in existing Oregon case law * * *. Therefore, to state that this court recognizes section 876 as reflecting the common law of Oregon breaks no new ground." *Granewich*, 329 Or at 54. The court concluded that "persons acting in concert may be liable jointly for one another's torts under any one of the three theories identified in *Restatement* section 876." *Id.* at 55 (footnote omitted).

The court further explained that, on application of the principles in either subsection (a) or (b), the minority shareholder in *Granewich* had stated a claim against the corporation's attorney for breach of fiduciary duty:

"Legal authorities * * * are virtually unanimous in expressing the proposition that one who knowingly aids another in the breach of fiduciary duty is liable to the one harmed thereby. That principle readily extends to lawyers. None of those authorities even implies that liability for participants in the breach of fiduciary duty is confined to those who *themselves* owe such duty. * * * We hold, therefore, that a defendant personally need not have committed a tortious act as a prerequisite to liability for acting in concert with another person who did commit that tortious act."

*Id.* at 56-57 (emphasis in original; footnotes omitted). Thus, under the facts as alleged in the complaint, the minority shareholder stated a claim for breach of fiduciary duty against the corporation's attorney based on the theory that the attorney knowingly provided "substantial assistance" or

"encouragement" to the majority shareholders in ousting the plaintiff and devaluing his stock and also on the theory that the attorney acted "pursuant to a common design" with the corporate agents to breach their duty to the minority shareholder.

The *Granewich* court specifically noted that the defendants in the case were not the clients of the attorney; rather, the attorney's client was the corporation itself and not its majority shareholders. Thus, the facts in *Granewich* did not require the court to resolve the question of joint liability between an attorney and his or her client. The court nonetheless addressed that issue because the majority opinion from this court had expressed concern that permitting joint liability "unduly would interfere with lawyer-client relations if lawyers could be held liable for actions performed on behalf of their clients that only indirectly result in their clients' breach of fiduciary duties." *Id.* at 58 (citing *Granewich*, 150 Or App at 48). The Supreme Court stated that, even though the joint tortfeasors in *Granewich* were not in an attorney-client relationship, "[w]e do not suggest, by drawing this distinction, that it necessarily matters that the corporation, rather than [the majority shareholders], was the client." *Id.* at 59 n 7. Elsewhere, the court quoted Austin Wakerman Scott and William Franklin Fratcher, *The Law of Trusts* § 326.4 (4th ed 1989), for the proposition that a trustee's attorney may be liable for a trustee's breach of the trust if the attorney "knew or should have known that he was assisting the trustee to commit a breach of trust," and stated that such liability "is consistent with the rule that lawyers generally are not liable to third parties for acts committed in good faith in performance of their professional activities as lawyers for clients, but that they may not knowingly assist in the commission of a tort." *Granewich*, 329 Or at 56 n 5. In sum, the court not only refrained from creating an exception to joint liability for lawyers who were named as codefendants with their own clients, it took the additional step of speculating that the holding *could* make a lawyer liable in such situations.

Reynolds understands the Supreme Court's *dictum* to explain how a lawyer and his or her client can be jointly liable for the same tort when the tortious conduct involves an

attorney's work for the client that results in the breach of the client's fiduciary duty to another. Markley, however, argues that the *dictum* merely flags a key distinction between the facts of *Granewich* and the present case; in *Granewich*, the facts did not present the issue of an attorney's liability for assisting a breach of the client's duty, but here the issue looms large. Markley is correct to state that we have not applied the rule of *Granewich* to hold an attorney jointly liable for the torts of his or her client. Nor did the cases that the court cited to justify its adoption of *Restatement* section 876 present that situation. However, since *Granewich*, we have indicated that, at least insofar as subsections (a) and (b) of that section involve knowing (as opposed to negligent) conduct by an attorney, those paragraphs are applicable to attorney-client joint liability for breach of fiduciary duty.

In *Roberts v. Fearey*, 162 Or App 546, 556, 986 P2d 690 (1999), we stated that an attorney may, in fact, be liable as a joint tortfeasor when he or she knowingly assists a client in the client's breach of a fiduciary duty. In that case, the beneficiaries of a trust brought an action against the trustee's attorney for malpractice. *Id.* at 548. We held that the trustee's attorney "did not owe a duty to protect the beneficiaries from their economic losses" and therefore could not be liable in negligence. *Id.* We reasoned that the absence of duty was dispositive in that case because the plaintiff had pleaded damages based on purely economic losses. *Id.* at 549-52. In *negligence* actions such as *Roberts*, "to recover purely economic losses, a plaintiff must plead some source of duty outside of the common law of negligence," such as the duty of certain professionals to their clients. *Id.* at 549 (citing *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987)). We declined to recognize a duty between the beneficiaries and the trustee's attorney in that case and held that, in the absence of another source of duty, the plaintiff could not state a claim for malpractice. *Id.* at 553-56. We noted, however, that, if the beneficiaries brought a claim against the trustee's attorney for a *knowing* breach of fiduciary duty, the attorney could be held jointly liable, and no other source of duty between beneficiary and trustee's attorney must be shown: "[I]f the trustee's attorney knowingly aids or assists the trustee in commission

of the breach of fiduciary duty, the successor trustee may also bring a claim for vicarious liability against the former trustee's attorney." *Id.* at 556 (citing *Granewich*, 329 Or at 56 n 5).

Based on the *Granewich* court's statements that an attorney may be liable for assisting a client's tortious conduct, and in light of our own statements in *Roberts* that, under *Granewich*, an attorney may be liable for knowingly assisting a client's breach of fiduciary duty, we conclude that *Granewich* may be applied to determine whether Markley is liable to Reynolds for having acted in concert with, aided, or encouraged Schrock in the breach of her fiduciary duty to Reynolds.[4]

---

[4] Several other courts have adopted the principles of *Restatement* section 876(b) to assign liability to attorneys who have aided clients in the client's breach of duty to a third party. *E.g., Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F3d 406, 412, 414 (3d Cir 2003) (judgment creditor plaintiffs stated a claim against judgment debtor's attorneys for joint liability for aiding clients in obstructing plaintiffs' efforts to execute judgment; allegations that attorneys "were active participants and planners in the scheme to obstruct" execution of judgment by recording a sham lease and misrepresenting court order to clerk, if proved, "went beyond the bounds of permissible advocacy" and constitutes knowing participation in client's conduct to delay enforcement of judgment of a court); *Thornwood, Inc. v. Jenner & Block*, 344 Ill App 3d 15, 27-29, 799 NE2d 756, 767-69 (2003) (stating that attorney may not "use his license to practice law as a shield to protect himself from the consequences of his participation in an unlawful or illegal conspiracy" and that policy "should prevent an attorney from escaping liability for knowingly and substantially assisting a client in the commission of a tort"; applying *Restatement* section 876(b), plaintiff stated claim against attorney for joint liability in client's breach of fiduciary duty against plaintiff when complaint alleged that attorneys substantially assisted client, who was plaintiff's former partner, in appropriating partnership opportunity and inducing plaintiff to release rights to assert breach of duty claims against former partner and attorneys); *Cacciola v. Nellhaus*, 49 Mass App Ct 746, 748, 754, 733 NE2d 133, 136, 139-40 (2000) (attorney for an individual partner and the partnership advised client partner that he could purchase a second partner's share without approval of the third partner; court held that third partner stated claim against attorney for joint liability in client's breach of fiduciary duty; allegations that attorney wrongly advised client that he could sell his share without required consent, served as attorney in transaction that conflicted with client's duty to other partners, and refused to give third partner information concerning the sale sufficed to state claim that attorney aided in client's breach of fiduciary duty); *Kurker v. Hill*, 44 Mass App Ct 184, 190 n 5, 689 NE2d 833, 837 n 5 (1998) (although plaintiff did not argue the matter on appeal, court employed *Restatement* section 876(b) and determined that plaintiff stated a claim against attorney for joint liability in shareholders' breach of fiduciary duty owed to plaintiff; attorney of majority shareholder was aware of freeze-out plans and assisted those events, including assisting sale designed to deflate value of corporate assets and securing vote to approve sale); *see also Noel v. Hall*, No 99-649-AS, WL 251709 at *7 (D Or, Jan 18, 2000), *modified on recons*, WL 1364227 (D Or,

We understand that this conclusion has serious implications for attorneys. As we noted in our opinion in *Granewich*, "it could be argued that to impose liability on attorneys for giving legal advice and acting on behalf of clients in the context of the facts of this case will undermine the attorney-client relationship as well as other professional relationships where highly specialized advice or services are rendered." 150 Or App at 46. In particular, we expressed concern that application of the *Restatement* test for attorney-client codefendants would require the attorney defendant to disclose confidential communications in order to prove absence of complicity or require the attorney defendant to monitor clients after rendering advice in order to ward off the possibility of joint liability. *Id.* at 46-47.

■ Other courts as well have noted the dilemma posed by holding attorneys jointly liable for their clients' breaches of fiduciary duty. For example, in *Chem-Age Industries, Inc. v. Glover*, 2002 SD 122, 165, 652 NW2d 765, 774 (2002), the court confronted a claim factually similar to the one in the present case and wrote:

> "Holding attorneys liable for aiding and abetting the breach of a fiduciary duty in rendering professional services poses both a hazard and a quandary for the legal profession. On the one hand, overbroad liability might diminish the quality of legal services, since it would impose 'self protective reservations' in the attorney-client relationship. *Goodman v. Kennedy*, 18 Cal. 3d 335, 134 Cal. Rptr. 375, 556 P.2d 737, 743 (1976). Attorneys acting in a professional capacity should be free to render advice without fear of personal liability to third persons if the advice later goes awry. *Schott v. Glover*, 109 Ill. App. 3d 230, 64 Ill. Dec. 824, 440 N.E.2d 376, 379 (1st Dist. 1982). On the other hand, the privilege of rendering professional services not being absolute, lawyers should not be free to substantially assist their clients in committing tortious acts. To protect lawyers from

Sept 15, 2000) (interpreting *Granewich* to permit plaintiff to state a claim against defendant attorney for joint liability in assisting his client, a partner, to breach fiduciary duty to co-partner/plaintiff by advising client to disclose contents of wiretap tapes to customers of partnership; allegations supported conclusion that attorney's conduct "went beyond mere representation of his clients, but included intent to harm plaintiff").

> meritless claims, many courts strictly interpret the common law elements of aiding and abetting the breach of a fiduciary duty. *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 186-87 (Minn. 1999)."

The court explained that, in order to minimize the risk of constraining frank and full attorney-client communication, it would strictly construe the terms of *Restatement* section 876. For example, the court held that, under subsection (b), the "substantial assistance requirement carries with it a condition that the lawyer must actively participate in the breach of a fiduciary duty." *Chem-Age Industries, Inc.*, 2002 SD at 166, 652 NW2d at 774. Accordingly, "[m]erely acting as a scrivener for a client is insufficient." *Id.* Rather, "[a] plaintiff must show that the attorney defendant rendered 'substantial assistance' to the breach of duty, not merely to the person committing the breach." *Id.* (citing *Granewich*).

We agree that, in applying the standards in *Restatement* subsections 876(a) and (b), adopted in *Granewich* as the common law of Oregon governing situations such as the one in the present case, a strict and narrow construction best protects the attorney-client relationship without conferring on attorneys a license to help fiduciaries breach their duties. *Restatement* subsection 876(a) exposes to liability an attorney who commits "a tortious act in concert with" or "pursuant to a common design" with another. We understand subsection (a) to require an affirmative agreement between attorney and client to aid each other in what the attorney knows is a breach of the client's fiduciary duty to a third party. Thus, for example, an attorney's advice to the client outlining the range of options and the consequences that might flow from them does not amount to a "common design" if, after hearing the advice, the client chooses on his or her own to engage in conduct that results in a breach of duty. Similarly, under subsection (b), "substantial assistance" or "encouragement" of the client's breach of fiduciary duty would consist of, for example, affirmative conduct that actually furthers the client's breach of fiduciary duty, done by the attorney with knowledge that he or she is furthering the breach.

In granting Markley's motion for summary judgment on the claims involving his alleged joint liability, the trial court wrote:

"I do not find and am not convinced that the fiduciary duty [between Reynolds and Schrock] extended to Mr. Markley. I recognize that there may be cases where a lawyer advising a client may incur liability as an aider to the commission of an act. But in this case, the language of the written agreements did not specifically prohibit the sale of Parcel Two [the lodge parcel]. In this case the only evidence is that Mr. Markley advised his client of what she could do given the language of the agreements. While it is troubling that Mr. Markley benefitted as a result of advice that may in the future cause a problem for defendant Schrock, there is no evidence that he was doing anything other than acting as Ms. Schrock's lawyer. Mr. Markley had no duty to the plaintiff. Therefore, the motion for summary judgment on the breach of fiduciary duty claim is granted."

This rationale contains two errors. First, it presumes that a fiduciary relationship between Markley and Reynolds is a necessary predicate for finding Markley liable. As we hold above, that is not the case. Second, it presumes that, as long as Markley was acting as Schrock's lawyer and advising her of her options under the settlement agreement, he cannot be liable for Schrock's breach of fiduciary duty. Again, we have decided differently. An attorney who drafts an agreement between a client and a third party knowing that the client and the third party are in a fiduciary relationship might draft an agreement imposing on the client duties that fall far short of what one fiduciary owes another. In that situation, if the attorney knows that the fiduciary relationship imposes a higher standard of conduct than the agreement, then the attorney who advises the client that he or she may do an act that the contract permits but that is incompatible with the fiduciary relationship may be liable for the breach of fiduciary duty. In the present case, a jury could find that Markley, having drafted the settlement agreement between Reynolds and Schrock, and knowing that Reynolds and Schrock owed each other fiduciary duties, nonetheless advised Schrock to breach her duty to Reynolds; that he helped Schrock conceal that breach from Reynolds; and that he received over $130,000 for his role in the transaction that constituted the breach. We must therefore remand so that the trial court may apply the standards as we have delineated them above.

## III. CONVERSION

■　　　Plaintiff also assigns error to the trial court's grant of defendant's motion for summary judgment on plaintiff's conversion claim. Plaintiff alleges that Schrock converted Reynolds's "unrecordable security interest" in the lodge property when Schrock sold that parcel before determining whether there would be a deficiency after the sale of the timber property, for which the lodge parcel would serve as a security. Reynolds argues that Markley is jointly liable for conversion because Markley advised Schrock concerning the transactions that effected the purported conversion and assisted in executing them.

Markley argues that an "unrecordable security interest" is not capable of being converted, and, even if it were, he cannot be jointly liable for conversion because he did not act "in concert with" or "substantially assist" Schrock in the alleged conversion. The trial court granted summary judgment based on its determination that Markley's advice to Schrock did not rise to assisting Schrock in the alleged conversion. We hold that the trial court's grant of summary judgment on the conversion claim was not error because Reynolds's contingent interest in the timber parcel is not capable of being converted.

■■　　　Conversion is an intentional exercise of control over the chattel of another that interferes with the other's rights in that chattel seriously enough to justify requiring the actor to pay the aggrieved party the full value of the chattel. *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 701, 703, 64 P3d 1193, *clarified on recons*, 187 Or App 472, 68 P3d 259 (2003); *Cottle v. Hayes*, 128 Or App 185, 188-89, 875 P2d 493 (1994). Often, the "chattel" that is the subject of a conversion action is tangible personal property. *Cross v. Campbell*, 173 Or 477, 486, 146 P2d 83 (1944) (sawmill parts); *Cottle*, 128 Or App at 188 (horses); *Francis v. Farnham*, 58 Or App 469, 471, 648 P2d 1349, *rev den*, 293 Or 635 (1982) (car). However, the Oregon Supreme Court has recognized that an unrecorded mortgage on land to secure an existing debt is also a "chattel" capable of being converted; thus, a mortgagor states a claim for conversion when the mortgagee sells the burdened property to a third party, so as

to deprive the mortgagor of its security interest in the property. *Conley v. Henderson,* 158 Or 309, 325, 75 P2d 746 (1938).

Reynolds argues that the agreement giving him a security interest in the lodge property was the functional equivalent of a "mortgage," the sale of which by Schrock (aided by Markley) amounted to a conversion. We disagree. Unlike the situation in *Conley,* here no actual debt ever came into existence. Such a debt would have occurred only if the timber property sold for less than $500,000. That event never occurred. Thus, Reynolds's security interest never came into existence. His interest was at all times contingent on events that did not come to pass. The Supreme Court has never held that a potential security interest—one that might occur if certain events transpire—is a chattel capable of conversion, and we see no reason to do so.

Judgment on claims for breach of fiduciary duty and breach of duty of good faith and fair dealing reversed and remanded; otherwise affirmed.