Argued and submitted March 6, decision of Court of Appeals reversed; judgment of circuit court affirmed September 8, reconsideration denied November 21, 2006

Diane REYNOLDS,
as Personal Representative of the Estate of
Clyde G. Reynolds,
*Respondent on Review,*

*v.*

Donna SCHROCK,
fka Donna Frechette,
*Defendant,*

*and*

Charles R. MARKLEY;
and Greene & Markley, P.C.,
an Oregon professional corporation,
*Petitioners on Review.*

(CC C991357CV; CA A119200; SC S52503)

142 P3d 1062

Thomas W. Brown, of Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for petitioners on review. With him on the brief was Wendy M. Margolis.

James E. Leuenberger, Lake Oswego, argued the cause for respondent on review. Terrance L. McCauley, Estacada, filed the brief for respondent on review.

George A. Riemer, General Counsel, Lake Oswego, filed the brief for *amicus curiae* Oregon State Bar.

BALMER, J.

**BALMER, J.**

This case requires us to determine whether a lawyer may be liable to a third party for aiding and abetting a client's breach of fiduciary duty, and, if the lawyer may be so liable, what circumstances must exist to impose liability. Plaintiff[1] sued defendant for breach of fiduciary duty, and he also sued defendant's lawyer for his role in that alleged breach. The trial court entered summary judgment in the lawyer's favor, and the Court of Appeals reversed. *Reynolds v. Schrock*, 197 Or App 564, 107 P3d 52 (2005).

We allowed the lawyer's petition for review and now reverse the decision of the Court of Appeals. We hold that a lawyer may not be held jointly liable with a client for the client's breach of fiduciary duty unless the third party shows that the lawyer was acting outside the scope of the lawyer-client relationship. Because there is no evidence in the summary judgment record that the lawyer in this case was acting outside the scope of that relationship, the lawyer was entitled to judgment as a matter of law. We therefore reverse the decision of the Court of Appeals and affirm the trial court's summary judgment in favor of the lawyer.

## I. FACTS

We take the facts from the Court of Appeals opinion and the record. Because this case comes to us on summary judgment, we review the facts in the manner most favorable to plaintiff, the nonmoving party. ORCP 47 C. Plaintiff was a naturopathic physician, and defendant Donna Schrock was one of plaintiff's patients. Plaintiff and Schrock bought two parcels of land together. In 1999, Schrock filed two separate actions against plaintiff. The first action concerned the jointly owned land, and the second alleged that, in the course of the doctor-patient relationship, plaintiff had engaged in improper sexual conduct with Schrock. The two actions were consolidated, and the parties later settled them in an agreement negotiated and drafted by their respective lawyers,

---

[1] This action was brought by Clyde Reynolds. During the litigation, Clyde Reynolds died, and the personal representative of his estate was substituted as plaintiff. For convenience, we refer to Clyde Reynolds and his estate collectively as "plaintiff."

including Schrock's lawyer, defendant Charles Markley. The settlement agreement provided, in part, that plaintiff would transfer his share of one of the two jointly owned properties (the "lodge property") to Schrock and that Schrock and plaintiff together would sell the second property (the "timber property") and transfer the proceeds to plaintiff. If the proceeds of the timber property sale were less than $500,000, then Schrock would pay plaintiff the difference and Schrock would grant plaintiff a security interest for that amount in the lodge property to secure the payment. If the proceeds of the timber property sale equaled or exceeded $500,000, then Schrock would owe plaintiff nothing and plaintiff would have no security interest in the lodge property.

After the parties signed the settlement agreement, plaintiff transferred his interest in the lodge property to Schrock. Markley then advised Schrock that, in his opinion, nothing in the settlement agreement expressly required her to retain the lodge property in anticipation of the possible creation of a security interest in plaintiff's favor.[2] Schrock, with Markley's assistance and without plaintiff's knowledge, sold the lodge property to a third party before the parties sold the timber property. Markley asked the escrow officer handling the sale to keep the sale confidential. Markley also advised Schrock that she could revoke the consent that she had given earlier to plaintiff's plan to sell the jointly owned timber property. In Markley's view, plaintiff had failed to provide Schrock with information about the value of the timber property prior to arranging to sell it, contrary to a requirement in the settlement agreement, and that breach freed Schrock from any obligation to consent to the sale of the timber property. Based on Markley's advice, and with Markley's assistance, Schrock revoked her consent to the sale of the timber property.

## II. PROCEEDINGS BELOW

Plaintiff sued Schrock and Markley over their actions in connection with the implementation of the settlement agreement. As to Schrock, plaintiff alleged, among

---

[2] We express no view regarding the correctness of Markley's advice to Schrock on that or the other legal issues as to which she consulted him.

other things, that the settlement agreement had created fiduciary duties between Schrock and plaintiff as joint venturers. Plaintiff asserted that Schrock, by selling the lodge property and revoking her consent to the sale of the timber property, had breached her fiduciary duty to plaintiff and the implied covenant of good faith and fair dealing that was part of the settlement agreement.[3] He further alleged that Schrock had converted his interest in the lodge property by selling that property and retaining the proceeds.

Plaintiff's complaint alleged that Markley was jointly liable with Schrock because he had aided and abetted Schrock's torts by giving her "substantial assistance and encouragement" in the commission of the torts and acting "in concert with [her] pursuant to a common design * * *." He also alleged that Markley had interfered with the contract (the settlement agreement) between plaintiff and Schrock. Plaintiff and Schrock later settled, leaving Markley as the only remaining defendant.

Markley moved for summary judgment, and the trial court granted his motion, stating, in part:

"[T]he only evidence is that Mr. Markley advised his client of what she could do given the language of the agreements. * * * [T]here is no evidence that he was doing anything other than acting as Ms. Schrock's lawyer. Mr. Markley had no duty to the plaintiff. * * * [His] duty runs only to his client."

On appeal, plaintiff assigned error to the trial court's judgment in Markley's favor on the "joint-liability tort claims"—that is, the claims that Markley was jointly liable with Schrock for breach of fiduciary duty and conversion.[4] The Court of Appeals affirmed the trial court's judgment in Markley's favor on the conversion claim. *Reynolds*, 197 Or App at 578-79. The court, however, reversed the judgment on

---

[3] Both the claim for breach of fiduciary duty and the claim for breach of the covenant of good faith and fair dealing arose from the duties that plaintiff and Schrock allegedly owed one another as a result of the settlement agreement. The parties and the courts below treated the claims as a single claim for breach of fiduciary duty, and we do as well.

[4] Plaintiff did not appeal the trial court's ruling in Markley's favor on the interference with contract claim.

the breach of fiduciary duty claim. The Court of Appeals held that this court's precedents did not exempt a lawyer from liability for assisting in a client's breach of fiduciary duty and that the Court of Appeals' case law suggested that a lawyer for a fiduciary could be liable for knowingly aiding or assisting a fiduciary in a breach of duty. *Id.* at 573-74. As noted, Markley sought review, which we allowed.[5]

## III. ANALYSIS

The material historical facts in the summary judgment record are essentially undisputed,[6] and the parties focus their arguments on the applicable legal standard. The trial court's determination that Markley was entitled to judgment as a matter of law is a legal question that we review for errors of law. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 98-99, 45 P3d 938 (2002). Where necessary, we view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the adverse party— in this case, plaintiff. *Id.* at 99.

### A. *Liability for Assisting a Breach of Fiduciary Duty*

We begin our analysis, as do the parties, with this court's decision in *Granewich v. Harding*, 329 Or 47, 985 P2d 788 (1999). That case provides a reasonable starting point because it involved claims for breach of fiduciary duty, including a claim against a lawyer for assisting others in

---

[5] Plaintiff did not cross-petition for review of the Court of Appeals' ruling in favor of Markley on the conversion claim, and the parties do not discuss that claim in their briefs. For that reason, we do not address that issue.

[6] One factual matter that the parties dispute is whether plaintiff was actually harmed by Schrock's sale of the lodge property. Markley asserts that there is no evidence in the record that plaintiff suffered "actual" harm from the sale because the record does not show whether the timber property sold for less than $500,000, which was a precondition of any additional financial obligation of Schrock to plaintiff and therefore of any security interest. Plaintiff disagrees. In addressing whether Markley can be held liable for substantially assisting in Schrock's breach of fiduciary duty, we assume, for purposes of this case, that Schrock did in fact breach a fiduciary duty that she owed to plaintiff, including causing plaintiff actual harm.

The parties also disagree as to whether the settlement agreement itself granted plaintiff a security interest in the lodge property, with plaintiff claiming that it did and Markley that it did not. We agree with the Court of Appeals that plaintiff's security interest always was contingent and "never came into existence." *Reynolds*, 197 Or App at 579. In any event, given our disposition of the case, that asserted factual dispute is not material.

breaching fiduciary duties that they owed to the plaintiff. Plaintiff argues that *Granewich* describes the elements required to state a claim and holds that a lawyer in Markley's position may be liable for assisting in a client's breach of fiduciary duty. In our view, however, *Granewich* does not provide a complete answer to the questions that this case raises.

The plaintiff in *Granewich*, a minority shareholder in a corporation, alleged that the corporation's two majority shareholders had breached their fiduciary duty to him by effectuating a corporate "squeeze-out." The plaintiff also asserted a separate claim against the corporation's lawyer, alleging that the lawyer had assisted the other defendants in that squeeze-out. This court held that the lawyer could be liable for aiding and abetting the other defendants' breach of fiduciary duty, even though the lawyer had no independent fiduciary duty to the plaintiff. However, the *Granewich* opinion specifically noted that the defendant lawyer in that case had represented the *corporation*, not the other defendants (the majority shareholders), and that the plaintiff had alleged that the lawyer's actions had fallen "*outside the scope* of any legitimate employment *on behalf of the corporation.*" *Id.* at 59 (emphasis added). Therefore, in *Granewich*, this court did not consider or answer the question that is at the core of this case: whether, and under what circumstances, a third party may assert a claim against a lawyer, acting in a professional capacity, for assisting a *client* in breaching the client's fiduciary duty.

The Court of Appeals recognized that *Granewich* left that question unanswered. However, based on two explanatory footnotes in *Granewich*, the Court of Appeals interpreted that case as holding that "an attorney may be liable for assisting a client's tortious conduct * * *." *Reynolds*, 197 Or App at 574. First, the court relied on a footnote in which this court stated that "[w]e do not suggest * * * that it necessarily matters that the corporation, rather than [the majority shareholders], was the client." *Granewich*, 329 Or at 59 n 7. However, that footnote simply conveyed this court's reluctance to answer a question that was not before it, and it was not an indication that the lack of a lawyer-client relationship in that case was irrelevant.[7] Second, the Court of Appeals

---

[7] Indeed, as commentators discussing *Granewich* have emphasized, the context of that case—the squeezing-out of a minority shareholder in a closely held

observed that, in another footnote, this court quoted a treatise stating that a lawyer could be liable for the torts of the lawyer's client under certain circumstances. *Reynolds*, 197 Or App at 572 (quoting *Granewich*, 329 Or at 56 n 5). The Court of Appeals then went on to explain that *dicta* in its opinion in *Roberts v. Fearey*, 162 Or App 546, 556, 986 P2d 690 (1999), supported its ultimate determination that Markley could be liable. *Reynolds*, 197 Or App at 573-74.

Although *Granewich* left unanswered the question of when a lawyer representing a client may be liable for the client's torts, that case usefully describes the circumstances in which a person who assists another in committing a tort ordinarily may be liable for resulting harm to a third party. *Granewich* stated that section 876 of the *Restatement (Second) of Torts* (*Restatement*) "reflect[s] the common law of Oregon" on that subject. 329 Or at 54. Section 876 provides:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> "(a)   does a tortious act in concert with the other or pursuant to a common design with him, or
>
> "(b)   knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> "(c)   gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

The parties agree that plaintiff's allegations do not state a claim under subsection (c) because plaintiff does not assert that Markley's "own conduct, separately considered, constitute[d] a breach of duty to [plaintiff]." The parties further agree, for purposes of this court's review, that Schrock owed a

---

corporation—is one in which the legal obligations of the corporation, the majority shareholder(s), and the minority shareholders (and the lawyers representing each) are complex and rapidly changing. *See, e.g.*, Comment, *Redefining Obligations in Close Corporation Fiduciary Representation: Attorney Liability for Aiding and Abetting the Breach of Fiduciary Duty in Squeeze-Outs*, 58 Wash & Lee L Rev 551 (2001) (discussing *Granewich* and other cases involving squeeze-outs; advocating redefinition of lawyers' obligations when representing majority shareholders). In *Granewich*, this court decided only the issue before it: a claim against the corporation's lawyer for substantially assisting the majority shareholders in their breach of fiduciary duty.

fiduciary duty to plaintiff and that she breached that duty. The specific issue thus is whether plaintiff can recover from Markley for acting in concert with Schrock or substantially assisting her in breaching the fiduciary duty that she owed to plaintiff.[8]

■    Under *Granewich* and the *Restatement*, a person who acts "in concert with" or "gives substantial assistance or encouragement" to a fiduciary who breaches a duty to a third party may be liable for the resulting harm. Markley argues, however, that that general rule does not apply when a lawyer, in the context of a lawyer-client relationship, advises a client who breaches a fiduciary duty to a third party. The *Restatement* labels any such exemption from liability that the law otherwise would impose as a "privilege." *See Restatement* § 890 ("One who otherwise would be liable for a tort is not liable if he acts in pursuance of and within the limits of a privilege * * *."). We therefore consider whether the fact that Markley was acting as Schrock's lawyer when he engaged in the challenged conduct created a privilege that protects Markley from liability. If that status does create such a privilege, then we must consider the circumstances in which the privilege applies.

B.    *Privilege Against Joint Liability for a Lawyer Assisting a Client's Breach of Fiduciary Duty*

■    This court has not considered previously what privileges, if any, protect a person from liability for substantially assisting another in a breach of fiduciary duty. However, several cases have considered privileges as they relate to claims for interference with contractual relations brought against advisors or agents who acted on behalf of another person or entity.[9] Those cases are instructive, because, like the present

---

[8] The Court of Appeals treated subsections (a) and (b) of *Restatement* section 876 as requiring similar, although not identical, showings of affirmative conduct by Markley for him to be jointly liable with Schrock for her breach of fiduciary duty. *Reynolds*, 197 Or App at 576. We do as well, for purposes of the issues decided in this case. We therefore do not consider Markley's other arguments concerning the differences between the elements required to establish liability under those two subsections.

[9] In some cases, this court has referred to section 890 of the *Restatement*, quoted in the text, in the course of determining whether a privilege exists in particular circumstances. *See, e.g., Comini v. Union Oil Co.*, 277 Or 753, 756, 562 P2d 175 (1977) (quoting *Restatement* and concluding that oil company's interference

case, they involve claims against a person for actions on behalf of a client or principal that allegedly harmed a third party.

In *Wampler v. Palmerton*, 250 Or 65, 439 P2d 601 (1968), the plaintiff sued a corporation's financial advisors for intentional interference with contractual relations for advising the corporation to breach its contract with the plaintiff. This court noted that the advisors owed a "duty of advice and action" to the corporation and that imposing liability on those advisors would paralyze the corporation's ability to act and to secure advice on how to act. *Id.* at 74-75. The court therefore recognized a privilege against liability for corporate advisors who act in good faith and for the benefit of the corporation. *Id.* at 75. Indeed, the court noted, the privilege protects the advisor from liability "even though plaintiff argues that the defendants intended to cause the corporation to take an unfair advantage of the plaintiff by means of the breach of contract." *Id.* at 76.

This court followed *Wampler* in *Straube v. Larson*, 287 Or 357, 600 P2d 371 (1979), where it considered an intentional interference claim by a radiologist against a hospital chief administrator who had recommended that the hospital suspend the radiologist's hospital privileges and other medical staff members who allegedly had conspired in seeking the suspension. The defendants claimed that they had acted to fulfill their duty to the hospital to ensure the proper care for patients. *Id.* at 369. This court applied the reasoning of *Wampler* and concluded that, if the defendants had acted in good faith and in the hospital's interest, then they had what "amount[ed] to the application of a qualified privilege" against liability. *Id.* at 369-71.[10] The court also addressed the issue of which party had the burden of proving that the defendants' acts came within the scope of the privilege and

with contract between distributor and buyer of distributor's business was privileged due to the consent of the parties to such interference). In other cases, such as those discussed in the text, this court has decided whether a privilege exists as a matter of Oregon's common law and without reference to the *Restatement*.

[10] Applying that standard, this court affirmed summary judgment for two of the defendants but reversed the summary judgment entered in favor of two other defendants, because there was evidence that those defendants had acted "to satisfy private grudges" rather than on behalf of the hospital and, therefore, did not come within the scope of the privilege. *Straube*, 287 Or at 370.

held that the plaintiff had "the burden of negating [that] qualified privilege * * * as part of his affirmative case." *Id.* at 371.

In *Welch v. Bancorp Management Services*, 296 Or 208, 214, 675 P2d 172 (1983), this court again considered the issue of when an agent can be liable in tort for actions that the agent takes on behalf of its principal and that cause harm to a third party. In that case, a real estate developer alleged that a lender had agreed to provide financing for a project but had breached that agreement based on "misrepresentations" and "false advice" given to the lender by its investment committee. *Id.* at 211. The developer sought to recover from the investment committee members for tortious interference with the financing agreement. Relying on its earlier decisions in *Wampler* and *Straube*, this court held that the investment committee had been acting as the agent of the lender and therefore was immunized from tort liability if its actions had been within the scope of its authority:

> "An agent acting as a financial advisor is thus privileged to interfere with or induce breach of the principal's contracts or business relations with third parties, as long as the agent's actions are within the scope of his employment and taken with an intent to further the best interests of the principal."

*Welch*, 296 Or at 218; *see also id.* at 216-17 ("[T]he proper test is whether the agent acts within the scope of his authority and with the intent to benefit the principal.").

This court, in the cases described above, protected from liability defendants who owed duties to an entity or person and who, in the course of performing those duties, harmed a third party. This court recognized a qualified privilege in those cases because it was necessary to protect important relationships between the defendant and the entity or person—the financial advisor and the corporation in *Wampler*, the staff and the hospital in *Straube*, and the investment committee and the lender in *Welch*. That is, this court, in exercising its common-law authority to define tortious conduct, implicitly concluded that the effective performance of the duties arising from those relationships required

that the person performing those duties have a qualified privilege from tort liability.[11]

The principle underlying the cases just discussed—that, for individuals and corporations to obtain the advice and assistance that they must receive from their agents, the agents must have some protection from tort liability to third parties—assists us in determining the rule that should be applied in this case. Not every relationship between a person who breaches a contract or a fiduciary duty and one who substantially assists in such a breach necessarily justifies recognition of a privilege against liability. However, we think that the lawyer-client relationship is one that does.[12] That is true, in our view, because safeguarding the lawyer-client relationship protects more than just an individual or entity in any particular case or transaction; it is integral to the protection of the legal system itself. *See Restatement (Third) of the Law Governing Lawyers (Restatement of Lawyers)* ch 2, Introductory Note (2000) (citing "the importance to the legal system of faithful representation"); *id.* § 121 comment b (conflict rules protect "interests of the legal system" by preventing compromise of process of adversary litigation). Myriad business transactions, as well as civil, criminal, and administrative proceedings, require that the client have the assistance of a lawyer. And a variety of doctrines, from the rules against conflicts of interest to the confidential nature of lawyer-client communications, demonstrate the ways in which the legal system protects the lawyer-client relationship.

Moreover, as was true in *Wampler, Straube,* and *Welch,* a third party's claim against the lawyer that puts the

---

[11] Although the cases described in the text involved agents and advisors other than lawyers, decisions in other jurisdictions apply the same qualified privilege from tort liability to claims brought against lawyers for their actions on behalf of clients. *See, e.g., Schott v. Glover,* 109 Ill App 3d 230, 440 NE2d 376 (1982) (illustrating proposition); Randy R. Koenders, Annotation, *Attorney's Liability in Tort for Interference with Contract to which Client was Party,* 85 ALR4th 846 (1991) (collecting cases).

[12] The arguments for and against permitting claims against a lawyer for substantially assisting a client's breach of fiduciary duty are discussed in Robert W. Tuttle, *The Fiduciary's Fiduciary: Legal Ethics in Fiduciary Representation,* 1994 U Ill L Rev 889 (1994), and Comment, *Changing the Nature of Corporate Representation: Attorney Liability for Aiding and Abetting the Breach of Fiduciary Duty,* 28 St Mary's LJ 213 (1996).

lawyer at odds with the client will compromise the lawyer-client relationship. A lawyer who is sued for substantially assisting a client's breach of fiduciary duty becomes subject to divided loyalties. As this court has recognized, lawyers cannot serve their clients adequately when their own self-interest—in these examples, the need to protect themselves from potential tort claims by third parties—pulls in the opposite direction. *See, e.g., In re Jeffery*, 321 Or 360, 898 P2d 752 (1995) (conflict of interest for lawyer to represent client in criminal case in which lawyer also was implicated); *see also Restatement of Lawyers* § 121 comment b (conflict compromises client's expectation of effective representation). Moreover, allowing a claim against the lawyer may raise issues of lawyer-client privilege, if the preparation of an adequate defense for the lawyer would require the disclosure of privileged communications. *Cf. State ex rel OHSU v. Haas*, 325 Or 492, 500, 942 P2d 261 (1997) (purpose of lawyer-client privilege " 'is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice' " (quoting *Upjohn Co. v. United States*, 449 US 383, 389, 101 S Ct 677, 66 L Ed 2d 584 (1981))); *Restatement of Lawyers* § 121, comment b (conflict rules prevent use of confidential client information against client's interest); *see also* ORS 9.460(3) (lawyer shall "[m]aintain the confidences and secrets of the attorney's clients * * *").

To summarize the discussion above, this court's earlier decisions hold that a person may be jointly liable with another for substantially assisting in the other's breach of a fiduciary duty owed to a third party, if the person knows that the other's conduct constitutes a breach of that fiduciary duty. *Granewich*, 329 Or at 57. Our tort case law also makes clear, however, that, if a person's conduct as an agent or on behalf of another comes within the scope of a privilege, then the person is not liable to the third party. In this case, we extend those well-recognized principles to a context that we have not previously considered and hold that a lawyer acting on behalf of a client and within the scope of the lawyer-client relationship is protected by such a privilege and is not liable for assisting the client in conduct that breaches the client's fiduciary duty to a third party. Accordingly, for a third party

to hold a lawyer liable for substantially assisting in a client's breach of fiduciary duty, the third party must prove that the lawyer acted outside the scope of the lawyer-client relationship.

Several features of the rule regarding the circumstances in which a lawyer's conduct may be privileged are particularly important. First, the rule places the burden on the plaintiff to show that the lawyer was acting outside the scope of the lawyer-client relationship. *See Straube*, 287 Or at 371 (plaintiff has burden of negating qualified privilege).

Second, the rule protects lawyers only for actions of the kind that permissibly may be taken by lawyers in the course of representing their clients. It does not protect lawyer conduct that is unrelated to the representation of a client, even if the conduct involves a person who is a client. Because such unrelated conduct is, by definition, outside the scope of the lawyer-client relationship, no important public interest would be served by extending the qualified privilege to cover it. *See Welch*, 296 Or at 216-17 ("[T]he proper test [for a privilege against liability for interference with contract] is whether the agent acts within the scope of his authority and with the intent to benefit the principal."). For the same reason, the rule does not protect lawyers who are representing clients but who act only in their own self-interest and contrary to their clients' interest. Similarly, this court would consider actions by a lawyer that fall within the "crime or fraud" exception to the lawyer-client privilege, OEC 503(4)(a), and Rule of Professional Conduct 1.6(b)(1), to be outside the lawyer-client relationship when evaluating whether a lawyer's conduct is protected.

The Court of Appeals, in this case, like other courts that have considered similar claims by nonclients against lawyers, struggled to reconcile the client's need for a lawyer's confidentiality, advice, and assistance with the desire to hold lawyers accountable for "affirmative conduct that actually furthers the client's breach of fiduciary duty, done by the attorney with knowledge that he or she is furthering the breach." *Reynolds*, 197 Or App at 576.[13] For that reason, the

---

[13] The *Restatement of Lawyers* also describes those competing policy interests multiple times but provides virtually no useful guidance to courts deciding cases where those interests conflict:

court held that, although a lawyer could be jointly liable under the principles of *Restatement*, section 876(a) and (b), for assisting a client that breached its fiduciary duty, "a strict and narrow construction best protects the attorney-client relationship without conferring on attorneys a license to help fiduciaries breach their duties." *Id.*

The Court of Appeals' "strict and narrow construction" formulation, however, provides insufficient guidance to lawyers and lower courts. Similarly, the court's distinction between a lawyer's advice to a client and the lawyer's other assistance to a client—such as drafting a letter or an agreement—fails to recognize the lawyer's role in actual transactions. In this case, for example, Schrock's right to receive legal advice from Markley is unduly cramped if Markley's potential tort liability to third parties prevents him from drafting transactional documents or making telephone calls necessary for Schrock to act on that advice. For that reason, we think that a test for liability that focuses on whether the lawyer's actions fall outside the scope of the lawyer's

---

"Lawyers regularly act in disputes and transactions involving nonclients who will foreseeably be harmed by inappropriate acts of the lawyers. Holding lawyers liable for such harm is sometimes warranted. Yet it is often difficult to distinguish between harm resulting from inappropriate lawyer conduct on the one hand and, on the other hand, detriment to a nonclient resulting from a lawyer's fulfilling the proper function of helping a client through lawful means. Making lawyers liable to nonclients, moreover, could tend to discourage lawyers from vigorous representation. Hence, a duty of care to nonclients arises only in the limited circumstances described in the Section. Such a duty must be applied in light of those conflicting concerns."

*Restatement of Lawyers*, § 51 comment b; *see also id.* § 56 comment b ("[A]mong the circumstances relevant to liability or defense under the general law are some that commonly attend lawyers practicing law, such as the fiduciary duties lawyers owe to clients and the powers, duties, and responsibilities that lawyers have in the legal system. Thus, courts considering the civil liability of lawyers must consider how a ruling that affirms or precludes liability would affect the vigorous representation of clients within the limits of the law, including, for example, the candid expression to clients of the lawyer's views on any matter within the scope of the representation. Courts must also take care, in construing liability provisions and professional rules, to avoid subjecting lawyers to inconsistent obligations."); *id.* § 56 comment c ("The social benefit of proper legal advice and assistance often makes it appropriate not to hold lawyers liable for activities in the course of a representation[.] * * * On the other hand, a lawyer is not always free of liability to a nonclient for assisting a client's act solely because the lawyer was acting in the course of a representation[.]").

representation of his or her client provides a better balance between the important interests at stake.

Courts in other jurisdictions also have limited a lawyer's joint liability for the wrongdoing of his or her clients to protect the lawyer-client relationship. In *Chem-Age Industries, Inc. v. Glover*, 2002 SD 122, 652 NW2d 756, 774-75 (2002), the South Dakota Supreme Court concluded that a lawyer could not be jointly liable for aiding a client's breach of fiduciary duty if the lawyer was "[m]erely acting as a scrivener for a client" and that liability could be imposed only if the lawyer "rendered 'substantial assistance' to the breach of duty, not merely to the person committing the breach." 652 NW 2d at 774. The Massachusetts Supreme Judicial Court rejected claims by trust beneficiaries that a trustee's lawyers could be liable for assisting the trustee's breach of fiduciary duty, holding that the beneficiaries had to "show that the [lawyer] knew of the breach and actively participated in it such that he or she could not reasonably be held to have acted in good faith." *Spinner v. Nutt*, 417 Mass 549, 556, 631 NE2d 542, 546 (1994). In a case involving the liability of an accountant for aiding and abetting a client's breach of fiduciary duty, the Minnesota Supreme Court, quoting *Restatement* section 876(b), noted that "most courts have recognized that 'substantial assistance' means something more than the provision of routine professional services" and found that allegations that alleged only that the accountant provided such "routine services" were insufficient to meet the "substantial assistance" requirement. *Witzman v. Lehrman, Lehrman & Flom*, 601 NW2d 179, 189 (Minn 1999).

In our view, the test that we hold applicable here—whether the lawyer's conduct fell outside the permissible scope of the lawyer-client relationship—often will lead to the same result as the tests adopted in the cases described above. It does so, however, in a more predictable and useful way, because it focuses on the scope of the lawyer-client relationship—and the legal rules, such as OEC 503(4)(a), that help define that scope—rather than on the fine line between "advice" and "assistance" or between "substantial assistance" and other assistance. We acknowledge that the test does not identify a bright line between liability and immunity, but it

nevertheless uses concepts tied directly to the lawyer's role in representing the client and existing sources of law regarding the scope of that role.[14]

## C. *Application of the Privilege*

■■      We now return to the facts of this case. Like the parties and the courts below, we assume for these purposes that Schrock breached a fiduciary duty to plaintiff and that Markley knowingly provided substantial assistance to her or acted in concert with her in so doing. We focus on whether Markley, as Schrock's lawyer, has a qualified privilege from liability to plaintiff for assisting in that breach of duty. Here, plaintiff had "the burden of negating [the] qualified privilege * * * as part of his affirmative case." *Straube*, 287 Or at 371. On summary judgment, therefore, plaintiff had the burden of producing evidence that would show that Markley's conduct was not privileged because it fell outside the permissible scope of his role as Schrock's lawyer. *See* ORCP 47 C (on summary judgment, "[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial").

Taken in the light most favorable to plaintiff, the summary judgment record shows that Markley took four actions that plaintiff asserts are relevant to his claims. First, Markley advised Schrock that the settlement agreement did not require her to retain the lodge property in anticipation of the possibility that plaintiff's security interest would attach to it and assisted her in selling it. Second, he called the escrow officer and asked her not to tell anyone about the pending sale of the property. Third, he assisted Schrock in revoking her consent to sell the timber property. Finally, he

---

[14] In *Schott v. Glover*, 109 Ill App 3d 230, 440 NE2d 376 (1982), the Illinois Court of Appeals adopted an approach similar to the one that we take today in a case involving a breach of contract claim against a bank and a related interference with contract claim against the bank's lawyer. The court held that the claim against the lawyer was insufficient because it failed to allege that the lawyer was acting outside the scope of the lawyer-client relationship. The lawyer's fiduciary duty to the bank meant that he was "privileged, in his capacity as the bank's attorney, to perform the acts and give the advice alleged" as to the bank's contractual obligations to the plaintiff. 440 NE2d at 380.

accepted substantial fees for performing legal work for Schrock, including the foregoing three actions.

Nowhere has plaintiff suggested, and nothing in the record indicates, that any aspect of Markley's advice and assistance to Schrock fell outside the scope of the lawyer-client relationship or the assistance that a lawyer properly provides for a client. There is no credible claim that Markley's conduct violated any applicable statute.[15] No evidence in the summary judgment record suggests that Markley's or Schrock's conduct was criminal or fraudulent. Whether or not Markley's interpretation of the agreement was correct—a determination that we need not make here—the purpose of the privilege requires that lawyers be able to assess the legal problems that their clients bring to them and discuss the full range of available solutions. Moreover, lawyers must be able to assist their clients in implementing those solutions, to the extent that that assistance falls within the legitimate scope of the lawyer-client relationship. Although courts may not always agree with the legal advice that a lawyer provides, protecting a lawyer from liability to a third party for advising a client is essential to the administration of justice. *Cf. In re Hockett*, 303 Or 150, 160, 734 P2d 877 (1987) ("A lawyer must be able to advise and assist clients in their affairs without fear of discipline if he [or she] is wrong in interpreting close questions of law. He or she must be given some latitude to be wrong.").

Plaintiff argues that we should interpret Markley's acceptance of fees as a self-interested act that fell outside the scope of the qualified privilege. We disagree. Whether Markley took no fee or an hourly fee or a contingent fee is irrelevant to the central question whether his actions fell within the scope of the lawyer-client relationship. If anything, Markley's acceptance of a fee supports his claim that he was acting as Schrock's lawyer, although there is no evidence here that he was *not* acting as her lawyer.

---

[15] Plaintiff asserts that Markley's and Schrock's actions constitute theft under ORS 164.015, which provides, in part, that a person "commits theft when, with the intent to deprive another of property or to appropriate property to the person or to a third person, the person: (1) [t]akes, appropriates, obtains or withholds such property from an owner thereof * * *." The facts do not support plaintiff's claim that Markley's or Schrock's actions constituted theft.

The summary judgment record reveals no evidence from which a reasonable jury could find that Markley acted outside the scope of the lawyer-client relationship in his representation of Schrock. Markley's conduct therefore falls within the scope of the privilege that we have described above. The trial court was correct in granting Markley's motion for summary judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.