No. 832 November 20, 2024 307

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Rafael Castillo RIVERA,
*an individual,*
*Plaintiff-Appellant,*

*v.*

PERLO CONSTRUCTION, LLC,
a domestic limited liability company et al.,
and State Accident Insurance Fund Corporation,
a state agency; Donna C. Wicher, PHD PC;
Dr. Donna C. Wicher, an individual; and Integrity Medical
Evaluations, Inc., a domestic corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
21CV45221; A179793

Benjamin N. Souede, Judge.

Argued and submitted May 15, 2024.

Quinn E. Kuranz argued the cause for appellant. Also on the briefs was The Office of Q.E. Kuranz, AAL, LLC.

Rebecca A. Watkins argued the cause for respondent SAIF. Also on the brief was Randi J. Ensley.

Amanda Bryan argued the cause for respondents Donna C. Wicher, Ph.D., P.C. and Dr. Donna C. Wicher. Also on the brief were Jacqueline Tokiko Mitchson, John M. Kreutzer, Amanda Bryan, and Bullivant Houser Bailey, PC.

Kim E. Hoyt argued the cause for respondent Integrity Medical Evaluations, Inc. Also on the brief was Ashley L. Brown.

Before Aoyagi, Presiding Judge, Egan, Judge, and Kistler, Senior Judge.*

_____

* Egan, J., *vice* Jacquot, J.

KISTLER, S. J.

Limited judgments reversed and remanded.

**KISTLER, S. J.**

Plaintiff appeals limited judgments dismissing three defendants in this employment discrimination case. The trial court ruled that plaintiff's claims against those defendants came within the exclusive jurisdiction of the workers' compensation system. We reverse the limited judgments and remand for further proceedings.

Because this appeal arises from defendants' motions to dismiss, we take the facts from plaintiff's second amended complaint (the complaint).[1] Plaintiff is originally from Chile, and his primary language is Spanish. In Oregon, he worked as a laborer for Perlo, a construction company. On Perlo's jobsite, the other employees repeatedly harassed plaintiff, improperly touched him, and attempted to intimidate him because of his nationality and limited English skills. When plaintiff reported those incidents to his supervisors and Perlo's risk management director Wood, they dismissed his complaints. They concluded, without an adequate investigation, that either the conduct had not occurred or that the sort of harassment plaintiff reported was par for the course on construction sites.

"As a result of the workplace harassment, mistreatment, assault, and discrimination [that plaintiff suffered at Perlo], [p]laintiff began experiencing emotional distress symptoms from his dormant PTSD."[2] Those symptoms led to plaintiff's filing a workers' compensation claim "indicating that he was suffering from PTSD" caused by the working conditions at Perlo. After SAIF denied plaintiff's workers' compensation claim, he brought this employment discrimination action against Perlo, Wood, and three other defendants involved in processing his workers' compensation claim: SAIF, which provided workers' compensation insurance to Perlo; Integrity Medical Evaluations, Inc., which arranges medical examinations of claimants; and Wicher, a doctor who examined plaintiff. Given the issues raised on

_____

[1] In describing the facts, we set out the historical facts alleged in the complaint and assume they are true. In considering the parties' arguments, we draw all reasonable inferences from the allegations of historical fact in plaintiff's favor.

[2] Plaintiff alleged that he had experienced PTSD 10 years earlier as a result of human trafficking.

appeal, we focus on how, according to the complaint, defendants SAIF, Integrity, and Wicher processed plaintiff's workers' compensation claim.

After SAIF received plaintiff's workers' compensation claim, it directed one of its investigators to look into the claim. During her investigation, the investigator left a voice message on a potential witness's phone saying that she had uncovered "evidence that Perlo employees [had] harassed [p]laintiff." That message found its way to Perlo and Wood, who allegedly "had a great deal of influence at SAIF." Wood complained to SAIF, which initially replaced the investigator and later fired her "because of her investigation into [p]laintiff's claims."[3]

On July 23, 2020, SAIF denied plaintiff's workers' compensation claim. Four days later, Wicher issued a letter opinion based on her review of plaintiff's file. She concluded that the working conditions at Perlo were not the major contributing cause of his PTSD. According to the complaint, the file that Wicher reviewed was incomplete, and the reasoning in her letter opinion deficient. The complaint alleged that Wicher's opinion reflected a larger practice in which workers' compensation insurers "hire certain doctors to perform a biased evaluation of a claimant and write a report, denying or challenging the claimant's purported workplace injury."

On August 12, 2020, Wicher examined plaintiff in person. She administered a standard psychological test and conducted an in-person interview. Later that day, Wicher issued a 15-page draft report and a nine-page final report. In her reports, Wicher concluded that plaintiff's work at Perlo was not the cause of his PTSD. Her report also noted that plaintiff was "making threats toward Perlo and SAIF employees" but added that plaintiff "'did not appear to be actively at risk of harm to himself or others at the time of the examination.'" Wicher transmitted the draft report to

---

[3] The complaint alleges that the investigator sued SAIF for retaliating against her and for employment discrimination. Our court recently resolved the investigator's claims. *See Cuddington-Placido v. SAIF*, 335 Or App 663, ___ P3d ___ (2024). That decision plays no role in our resolution of this appeal, as the remainder of our opinion makes clear.

Integrity, which forwarded it to SAIF.[4] According to the complaint, Wicher's "report was a sham and failed to properly evaluate Plaintiff's condition and the causes of [his] condition."

On August 19, 2020, plaintiff's counsel notified SAIF that plaintiff was asserting "claims against SAIF for aiding, abetting, inciting, compelling, or coercing unlawful employment discrimination, including SAIF's actions in interfering with the investigation into [plaintiff's] workplace discrimination and harassment claims." The same day, plaintiff's counsel notified Perlo and Wood that plaintiff was asserting employment related claims against them and others who "may be implicated in the tortious, unlawful or discriminatory conduct and treatment of [plaintiff] in connection with his work at Perlo."

Five days later, "SAIF contacted Wood to inform Wood and Perlo that Integrity was contacting the Oregon State Police because of allegations Dr. Wicher made in the August 12, 2020, IME report." Two days after SAIF contacted Wood, SAIF sent a "heavily redacted" copy of Wicher's draft report to Perlo's attorney. The redacted copy of Wicher's report that SAIF sent Perlo included the threats that plaintiff had made against Perlo's employees but omitted Wicher's observation that plaintiff "did not appear to be actively at risk of harm to himself or others at the time of the [August 12] examination."[5] Approximately two weeks later, Perlo's attorney sent plaintiff a termination letter for making "statements that threaten[ed] physical violence towards Perlo personnel."

As noted, plaintiff brought this action against Perlo, Wood, SAIF, Integrity, and Wicher. The complaint alleged, among other things, that Perlo had subjected plaintiff to

_____

[4] The complaint refers primarily to Wicher's draft report. Although her final report is six pages shorter than her draft report, the complaint does not allege how the two reports differ or if any difference is material.

[5] One paragraph in the complaint differs in some respects from the allegations noted above. It appears to allege (it could be clearer) that "Integrity/Dr. Wicher" reported plaintiff's threats against Perlo's employees to the Oregon State Police. That paragraph alleges that, in addition to reporting plaintiff's threats to the state police, Integrity/Wicher told the police about "Wicher's observation that Plaintiff 'did not appear to be actively at risk of harm to himself or others'"—a detail that SAIF allegedly omitted from the redacted report it forwarded to Perlo's attorney.

discrimination because of his race and national origin. Plaintiff claimed that Perlo had retaliated against him for reporting his coworkers' discriminatory conduct and for filing a workers' compensation claim. He also alleged that Perlo had unlawfully denied him certain statutory rights, such as disability protections and rights arising under the Oregon Family Leave Act. Finally, plaintiff alleged that SAIF, Integrity, and Wicher had aided and abetted Perlo's employment law violations, without alleging which violations defendants had aided and abetted or the theories on which plaintiff's aiding and abetting claims rested.[6]

SAIF, Integrity, and Wicher moved to dismiss plaintiff's claims against them. Essentially, each defendant's motion started from the proposition that plaintiff's claims against them arose solely from their actions in processing his workers' compensation claim. It followed, they argued, that the workers' compensation system either provided the exclusive remedy for those actions or had exclusive jurisdiction over plaintiff's claims against them. Alternatively, defendants argued that their actions processing plaintiff's claims did not aid and abet Perlo's discriminatory conduct or at least that plaintiff had not pleaded ultimate facts showing that they did. Finally, SAIF attached a copy of a disputed claim settlement (DCS) to its motion and argued that the DCS barred plaintiff's claims against it.

Plaintiff responded that the exclusive remedy provisions of ORS 656.018 were limited to workplace injuries covered by the workers' compensation statutes and did not limit claims for aiding and abetting employment discrimination. Most of plaintiff's response to defendants' pleading arguments focused on the proposition that defendants could be liable for aiding and abetting Perlo's employment discrimination, without specifying the theory or theories on which his aiding and abetting claims were based. Finally, after noting briefly that the DCS was not properly before

---

[6] Plaintiff's complaint also alleged that SAIF, Integrity, and Wicher had violated various employment discrimination statutes that apply only to plaintiff's employer. Plaintiff later explained that he was not claiming that SAIF, Integrity, and Wicher were his employer or that they had independently violated those statutes. Rather, he was claiming only that defendants had aided and abetted Perlo's employment discrimination.

the court on SAIF's motion to dismiss, plaintiff argued at greater length that the DCS resolved only his workers' compensation claims.

After considering the parties' arguments, the trial court ruled that it lacked jurisdiction to decide plaintiff's aiding and abetting claims. Focusing initially on plaintiff's claims against SAIF, the court observed that "[a]ll of the * * * allegations against Defendant SAIF revolve around SAIF's investigation and processing of Plaintiff's worker's compensation claim." The court reasoned that plaintiff's allegations against SAIF constituted "matters concerning a claim" over which the workers' compensation system has exclusive jurisdiction. *See SAIF v. Harris*, 66 Or App 165, 672 P2d 1384 (1983) (inferring from the structure of the workers' compensation statutes that the workers' compensation system has exclusive jurisdiction over matters concerning a claim). Citing *Gordineer v. Bellotti*, 100 Or App 102, 105-06, 785 P2d 362 (1990), the court concluded that it lacked jurisdiction to decide plaintiff's aiding and abetting claims against SAIF. The court added, without further explanation, that plaintiff's claims against Integrity and Wicher failed for the same reason.

Having concluded that it lacked jurisdiction, the court did not decide whether, as defendants argued alternatively, plaintiff's complaint failed to state claims for aiding and abetting Perlo's tortious conduct. Rather, the court observed that any further amendment of the complaint appeared futile and dismissed plaintiff's claims against SAIF, Integrity, and Wicher with prejudice.

On appeal, the parties focus on three issues. First, even if the workers' compensation system has exclusive jurisdiction over matters concerning a claim, does that bar plaintiff from pursuing a separate action against defendants for aiding and abetting Perlo's employment discrimination? Second, if plaintiff can pursue his aiding and abetting claims, does his complaint state claims against each defendant for aiding and abetting Perlo's tortious actions? Finally, does the DCS bar plaintiff's aiding and abetting claims against SAIF, Integrity, or Wicher?

We begin with the last issue. If the DCS resolves plaintiff's aiding and abetting claims against defendants, then it would eliminate the need to consider the first two issues that plaintiff raises on appeal. In considering that issue, we begin with a procedural question. Plaintiff's complaint does not refer to the DCS or set out its terms. Rather, SAIF's argument is based on documents that it attached to its motion to dismiss. Procedurally, the initial question is whether those documents were properly before the court on a motion to dismiss.

A motion to dismiss for failure to state a claim for relief is limited to the allegations in the complaint. *Deep Photonics Corp. v. LaChapelle*, 282 Or App 533, 548, 385 P3d 1126 (2016), *rev den*, 361 Or 524 (2017). ORCP 21 A(2)(b), however, permits specific motions to dismiss based on facts that do not appear on the face of the pleadings. The Supreme Court and we have sometimes considered motions to dismiss that are not specifically listed in ORCP 21 A(2)(b), even when those motions are based on facts outside the complaint. *See Black v. Arizala*, 337 Or 250, 261-66, 95 P3d 1109 (2004) (forum selection clause); *Curzi v. Oregon State Lottery*, 286 Or App 254, 257, 398 P3d 977, *rev den*, 362 Or 175 (2017) (tort claim notice).[7] Alternatively, we have reasoned that a motion to dismiss based on facts outside the pleadings can be viewed as the functional equivalent of a summary judgment motion. *Black v. Arizala*, 182 Or App 16, 22-23, 48 P3d 843 (2002), *aff'd on other grounds*, 337 Or at 272 (2004).

In this case, plaintiff has focused, both before the trial court and on appeal, on the merits of SAIF's argument that the DCS bars his aiding and abetting claims. So do we. That is, we assume that, to the extent SAIF's motion to dismiss is based on the DCS, it is the functional equivalent of a summary judgment motion. We accordingly begin with the text of the DCS, which provides that, in return for SAIF's promise to pay an agreed sum,

"claimant hereby accepts the payment of this sum in full settlement of all issues raised [*sic*] arising out of the denied

---

[7] In *Black* and *Curzi*, the Supreme Court and we appear to have viewed motions to dismiss based, respectively, on a forum selection clause and a tort claim notice defense as sufficiently close to a motion to dismiss for lack of jurisdiction to come within ORCP 21 A(2)(b).

treatment, condition(s), disability, injury, or occupational disease including interest accrued or benefits pending appeal."

On appeal, SAIF argues that claim preclusion bars plaintiff from relitigating whether SAIF's actions in processing his workers' compensation claim aided and abetted Perlo's employment discrimination. SAIF's claim preclusion argument is at odds with our decision in *Fleming v. SAIF*, 302 Or App 543, 461 P3d 261 (2020). In that case, we reaffirmed that "a DCS does not give rise to claim preclusion or issue preclusion." *Id.* at 549.[8] Rather, as we explained in *Gilkey v. SAIF*, 113 Or App 314, 832 P2d 1252, *rev den*, 314 Or 573 (1992), a DCS only binds the parties to that agreement to the issues that the DCS resolved. *See id.* at 317 (holding that the DCS in that case established that, as between the parties to the agreement, an earlier injury "cannot be regarded as having contributed to [the] claimant's present condition"). Following *Gilkey*, we held in *Fleming* that a DCS does not give rise to nonmutual issue preclusion. 302 Or App at 549.

It follows from *Gilkey* and *Fleming* that the DCS in this case has no preclusive effect on plaintiff's aiding and abetting claims against Integrity and Wicher. They were not parties to the agreement. Arguably, the DCS could have resolved plaintiff's aiding and abetting claims against SAIF to the extent that the parties intended to do so.[9] However, we have examined the three documents that SAIF attached to its motion to dismiss, and we cannot say that those documents reflect an unambiguous intent to resolve plaintiff's aiding and abetting claims against SAIF. In short, we cannot say, on this record, that the DCS provides an alternative basis for affirming the trial court's ruling granting defendants' motions to dismiss.[10]

---

[8] The court reasoned that the board's approval of a DCS based on a fairness review does not convert the board's approval into an agency order that can have preclusive effect. *See Fleming*, 302 Or App at 549 (disagreeing with the dissenting opinion's view on that point).

[9] We say "arguably" because plaintiff contends that the DCS did not and could not have resolved anything other than workers' compensation claims. It is sufficient in this case to hold only that the DCS did not unambiguously resolve plaintiff's aiding and abetting claims.

[10] We note separately that a critical passage in the DCS appears to be missing a word. The DCS states that plaintiff accepts SAIF's promise to pay a specified

We accordingly turn to the primary issue on which the trial court based its ruling—that the workers' compensation system has exclusive jurisdiction over matters concerning a claim. We note, as an initial matter, that the question whether the workers' compensation system provides the exclusive remedy for a claim is separate from the question whether it has exclusive jurisdiction over matters concerning a claim. *See Kahn v. Providence Health Plan*, 335 Or 460, 465, 71 P3d 63 (2003) (distinguishing comparable substantive and procedural limitations in ORS 656.260). More importantly, the Supreme Court explained in *Kahn* that we had incorrectly dismissed a medical malpractice claim based on the workers' compensation system's exclusive jurisdiction over the medical decision that gave rise to that claim, although the court went on to uphold our decision based on a related but separate substantive statutory limitation on liability. *Id.* at 465-66. Following *Kahn*, we discuss those two doctrines separately.

In this case, SAIF relies on a substantive limitation on liability found in ORS 656.018. Subsection (1)(a) of that statute provides that the liability of every employer that complies with ORS 656.017 "is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers." ORS 656.018(1)(a). Subsection (3) extends that substantive exemption from liability to the employer's workers' compensation insurer. ORS 656.018(3). Although Integrity and Wicher assert on appeal that ORS 656.018 applies to them, they never explain why that is so.[11] And, in the trial court, they relied on the related but separate proposition that the workers' compensation system has exclusive jurisdiction over matters concerning a claim.[12]

sum "in full settlement of all issues raised arising out of the denied treatment, condition(s), disability, injury, or occupational disease." As a grammatical matter, one would have expected the word "and" or "or" between "raised" and "arising out of." The parties have not addressed that point in their arguments on appeal.

[11] ORS 656.018(3) extends the exemption from liability set out in ORS 656.018(1) to the employer's insurer and the insurer's "contracted agent." The Supreme Court has interpreted the term "contracted agent" narrowly, *Nicholson v. Blachly*, 305 Or 578, 753 P2d 955 (1988), and Wicher and Integrity do not argue that either of them is SAIF's contracted agent.

[12] Wicher did rely on a statute, implemented by rule, that grants substantive immunity to medical service providers who transmit medical reports to the

In considering whether ORS chapter 656 provides either the exclusive remedy for plaintiff's aiding and abetting claims or gives the workers' compensation system the exclusive jurisdiction over those claims, we begin with our cases. We then turn to the gloss that the Supreme Court's decision in *Kahn* put on our cases.

The parties rely primarily on two cases: *Palmer v. Bi-Mart Company*, 92 Or App 470, 758 P2d 888 (1988), and *Gordineer*. *Palmer* was an exclusive remedy case. In *Palmer*, the plaintiff's supervisor sexually harassed the plaintiff at work, which led to her filing two claims: a workers' compensation claim for stress and a gender discrimination claim in circuit court. *Id.* at 472. In circuit court, the employer argued that the plaintiff's employment discrimination claim should be dismissed because ORS 656.018 provided the "exclusive remedy" for her workplace injuries. *Id.* at 473. We disagreed.

We explained that the supervisor's sexual harassment violated two separate statutory rights and resulted in two distinct injuries to (1) the right provided in ORS chapter 656 to be compensated for certain workplace injuries and (2) the right provided in ORS chapter 659 to be free from gender discrimination in the workplace. *Id.* at 473-75. We concluded that the legislature did not intend to preclude a worker who had sustained a compensable workplace injury from recovering for a violation of the separate, distinct statutory right to be free from gender discrimination. *Id.* at 475. That was true even though the same set of acts gave rise to both the employee's workers' compensation and employment discrimination claims. *See Merten v. PGE*, 234 Or App 407, 414-16, 228 P3d 623, *rev den*, 348 Or 669 (2010).[13]

---

worker's employer. Wicher and plaintiff have engaged in a protracted debate about whether Wicher is a medical service provider. That debate seems beside the point. Plaintiff has not alleged that either Wicher or Integrity transmitted a medical report to his employer. Rather, he alleged that SAIF did.

[13] On appeal, defendants argue that plaintiff did not preserve his claim that the same set of acts can give rise to workers' compensation and employment discrimination claims. However, in responding to the motions to dismiss, plaintiff argued that ORS 656.018 provides the exclusive remedy for bodily injuries that arise out of and in the course of work, but not for workplace injuries to other protected rights. He also told the trial court during the hearing on defendants' motions that the same act can result in a workers' compensation claim and an employment discrimination claim. Although plaintiff did not cite *Palmer* in the

*Gordineer* relied on a related but separate doctrine—that the workers' compensation system has "exclusive jurisdiction" over "matters concerning a claim." *See* 100 Or App at 105-06. In *Gordineer*, the employee brought a declaratory judgment action in circuit court to establish that his employer had committed fraud when she testified at his workers' compensation hearing; specifically, he sought to establish that the Workers' Compensation Board (the board) had erroneously relied on his employer's fraudulent testimony when it reduced his temporary total disability award. *Id.* at 104. We explained that the employee sought to use the declaratory judgment action "to overturn a [final] workers' compensation decision, and the trial court was correct in holding that the remedies in the workers' compensation law are exclusive." *Id.* at 106.

As we read *Palmer* and *Gordineer*, they are consistent.[14] *Palmer* holds that the exclusive remedy provided in ORS 656.018 for "injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment" does not preclude an employee from bringing an employment discrimination claim against her employer based on an injury to a separate, distinct legal right, even when the two claims arise from the same set of facts. And, if the exclusive remedy provision in ORS 656.018(1) does not preclude an employee from bringing an employment discrimination claim in circuit court, it follows that the board's exclusive jurisdiction over matters concerning a claim does not preclude the circuit court from hearing the employment discrimination claim.

*Gordineer* stands for a more limited proposition. It holds that the workers' compensation system's exclusive jurisdiction over matters concerning a claim prevents an employee from bringing a declaratory judgment action in circuit court to collaterally challenge the board's final decision adjudicating a workers' compensation claim. In the same vein, our other exclusive jurisdiction cases have held that attempts to obtain or retain workers' compensation benefits

---

trial court, his arguments were sufficient to preserve the issue. *State v. Walker*, 350 Or 540, 551, 258 P3d 1228 (2011).

[14] There may be some tension between the reasoning in *Gordineer* and *Merten*. However, *Palmer*, which is directly on point, is consistent with *Gordineer*.

must be pursued within the workers' compensation system. *See, e.g.*, *Speciality Risk Services v. Royal Indemnity Co.*, 213 Or App 620, 627, 164 P3d 300 (2007) (discussing exclusive jurisdiction cases); *Hayden v. Workers' Compensation Dept.*, 77 Or App 328, 331, 713 P2d 612 (1986) (exclusive jurisdiction over offsets to permanent total disability awards); *Harris*, 66 Or App at 168-69 (exclusive jurisdiction to decide whether SAIF could recoup a permanent partial disability award paid to the worker).

The Supreme Court's decision in *Kahn* confirms that defendants' reliance on our exclusive jurisdiction cases is misplaced. In *Kahn*, a workers' compensation insurer entered into an agreement with a managed care organization (MCO) pursuant to ORS 656.260 to permit the MCO to decide the appropriate medical treatment for accepted workers' compensation claims. *See* 335 Or at 462. The MCO initially denied the plaintiff's request for surgery to treat her accepted back condition but approved her request several months later. *Id.* at 463-64. After the surgery, the plaintiff filed a medical malpractice claim against the MCO to recover for the pain and suffering that she experienced during the period in which the MCO had denied surgery. *Id.* at 464.

The trial court dismissed the plaintiff's medical malpractice claim, and we affirmed. We relied on ORS 656.260(6) (2003), *amended by* Or Laws 2005, ch 26, § 8; *renumbered as* ORS 656.260(7) (2007), which provided that the MCO's decision regarding the appropriate medical treatment was "'subject *solely* to review by the director'" of the Department of Consumer and Business Services. *Kahn v. Providence Health Plan*, 170 Or App 602, 605, 13 P3d 556 (2000) (quoting that statute; emphasis added). We explained that the statute gave the director sole authority to review the MCO's decision and, in doing so, divested the circuit court of authority to consider the plaintiff's medical malpractice claim challenging the same decision. *Id.*

On review, the Supreme Court ruled that we had "incorrectly treated the provisions of ORS 656.260(6) [(2003)] as dispositive." *Kahn*, 335 Or at 465. The court explained that that statute was "procedural" and described the route

a claimant had to follow to obtain administrative review of the MCO's decision. *Id.* The court reasoned that the statute was "not substantive; it [did] not forbid actions such as the one that [the] plaintiff [had] brought here." *Id.* The court went on, however, to identify another statute that specifically prohibited "an action for civil damages" based on the MCO's decision. *Id.* Given that substantive limitation, the court agreed that we had reached the right result, albeit for the wrong reason. *Id.*

If the director's "sole" authority to review a MCO's treatment decision in *Kahn* did not preclude the employee in that case from bringing a medical malpractice action against the MCO to challenge that decision, it is difficult to see why our exclusive jurisdiction cases divested the circuit court of jurisdiction to decide plaintiff's employment discrimination claims in this case. Our exclusive jurisdiction cases are "procedural" in the same way that the statute on which we relied in *Kahn* was.

That said, we do not view the Supreme Court's decision in *Kahn* as calling into question the specific holdings in our exclusive jurisdiction cases. The Supreme Court's decision in *Kahn*, however, does confirm our conclusion that our exclusive jurisdiction cases do not sweep as broadly as defendants and the trial court understood. And, as explained above, our decision in *Palmer* establishes that the substantive limitation on liability in ORS 656.018 does not bar plaintiff from pursuing claims against SAIF (and by implication Integrity and Wicher) for aiding and abetting Perlo's alleged employment discrimination. The trial court erred in dismissing plaintiff's aiding and abetting claims based on the workers' compensation system's exclusive jurisdiction.

The primary question that remains is whether the complaint states aiding and abetting claims against SAIF, Integrity, or Wicher. *See Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 80, 490 P3d 166 (2021) (liability for aiding and abetting employment discrimination is not limited to employers and employees). Although the trial court did not reach that issue, it could provide an alternative ground for upholding the trial court's judgment. On that issue, defendants note that they were responsible for

processing plaintiff's workers' compensation claim. They argue that the fact that they processed his claim and denied it, even if they did so erroneously, is not sufficient to state a claim against them for aiding and abetting Perlo's employment discrimination. In their view, any assistance their actions provided Perlo was merely incidental and did not give rise to aiding and abetting liability.

Procedurally, defendants argue, and we agree, that plaintiff's allegation that they "aided and abetted" Perlo's employment discrimination is, without more, not sufficient to state an aiding and abetting claim. That allegation, by itself, merely states a legal conclusion. *See Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 529, 185 P3d 446 (2008) (disregarding conclusions of law alleged in the complaint). Oregon's code pleading rules require greater particularity. *See McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 283-84, 193 P3d 9 (2008) (requiring that ultimate facts be alleged with particularity to plead a specific defense); *cf. Crosby v. SAIF Corp.*, 73 Or App 372, 374-75, 699 P2d 198 (1985) (concluding that an allegation that SAIF and the plaintiff's employer "met and agreed" to deprive the plaintiff of a workers' compensation benefit was sufficient to plead an actionable conspiracy).

Arguably, it is possible to go through the complaint and determine whether any of the allegations is sufficient to establish that SAIF, Integrity, or Wicher went beyond their ordinary role in processing plaintiff's workers' compensation claim or that they did so in a way that aided and abetted one or more of Perlo's alleged discriminatory acts. It does not appear, however, that at any stage of this litigation the parties have correctly focused on the minimum standards that a civil aiding and abetting claim must meet, which poses an issue for determining the sufficiency of the aiding and abetting allegations.

With that preface, we first set out the minimum standard that, as a matter of Oregon common law, an aiding and abetting claim must meet. We then note cases in which we and the Supreme Court have either required greater specificity or recognized a qualified privilege in instances that are arguably comparable to this case. Finally, we explain

why, with the pleadings and arguments in this rudimentary state, we decline to reach the sufficiency of plaintiff's allegations as an alternative ground for affirming the trial court's limited judgments.

The Oregon Supreme Court has clarified when, as a matter of Oregon common law, one person may be held civilly liable for another's tortious conduct. *Granewich v. Harding*, 329 Or 47, 53-54, 985 P2d 788 (1999). More specifically, the court explained in *Granewich* that section 876 of *Restatement (Second) of Torts* (1979) reflects Oregon common law. *Id.* That section provides:

> "'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> "'(a)   does a tortious act in concert with the other or pursuant to a common design with him, or
>
> "'(b)   knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> "'(c)   gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.'"

*Id.* (quoting *Restatement* § 876).

Not every act that aids another's tortious acts (even when done knowingly) will give rise to aiding and abetting liability under section 876. *See Twitter, Inc. v. Taamneh*, 598 US 471, 489-93, 143 S Ct 1206, 215 L Ed 2d 444 (2023) (discussing the common-law antecedents of a federal statute modeled on section 876). In *Taamneh*, for example, the Court held that a complaint failed to state a claim that Twitter had aided and abetted an ISIS terrorist attack even though Twitter was aware of ISIS's use of its platform to recruit terrorists and celebrate terrorism.[15] *Id.* at 481, 505. Closer to

---

[15]  The Court summarized its reasoning:

"Plaintiffs allege only that defendants supplied generally available virtual platforms that ISIS made use of, and that defendants failed to stop ISIS despite knowing it was using those platforms. Given the lack of nexus between that assistance and [a specific ISIS] attack, the lack of any defendant intending to assist ISIS, and the lack of any sort of affirmative and culpable misconduct that would aid ISIS, plaintiffs' claims fall far short of plausibly alleging that defendants aided and abetted [the specific ISIS] attack."

home, we have held that, in determining whether a lawyer allegedly aided and abetted a client's tortious actions, section 876 should be applied "strict[ly] and narrow[ly]." *Reynolds v. Schrock*, 197 Or App 564, 575-76, 107 P3d 52 (2005), *rev'd on other grounds*, 341 Or 338, 142 P3d 1062 (2006); *see Padrick v. Lyons*, 277 Or App 455, 471-72, 372 P3d 528, *rev den*, 360 Or 26 (2016) (following our decision in *Reynolds*). On review in *Reynolds*, the Supreme Court went further and held that lawyers representing clients who were allegedly committing tortious acts have a "qualified privilege"; that is, a lawyer will be liable for aiding and abetting a client's torts only when the "lawyer's conduct f[alls] outside the permissible scope of the lawyer-client relationship." *Reynolds*, 341 Or at 353.

As noted above, at no point in this case have the parties focused their arguments on the standards set out in *Granewich*. Plaintiff has neither alleged with particularity nor argued whether his aiding and abetting claims come within a specific subsection or subsections of section 876. Defendants, for their part, have not invoked those standards in challenging the sufficiency of plaintiff's allegations, nor have they have argued that those standards should be strictly and narrowly applied to the extent that they were processing workers' compensation claims. Finally, they have not argued that a qualified privilege should apply, which would provide additional protection from aiding and abetting liability.

Perhaps the parties take the position that *Granewich* is inapplicable. If that is their position, they have not explained why that is so. To the extent the parties do not dispute that *Granewich* applies, we cannot tell with any certainty from the pleadings or plaintiff's arguments which theory or theories of liability set out in section 876 he bases his aiding and abetting claims on. Similarly, defendants have not argued that, in these circumstances, the minimum standards set out in *Granewich* should be strictly and narrowly applied, nor have they argued that they are entitled to

---

598 US at 505. We do not suggest that *Taamneh* is directly applicable. It illustrates, however, the various considerations that, in combination, can inform whether a complaint states a claim for aiding and abetting under a federal counterpart to section 876(b).

a qualified privilege. Given this state of the pleadings and arguments, we conclude that the better course is to reverse the limited judgments and remand this case to the trial court. Plaintiff can decide whether he wants to stand on his complaint or wants to seek leave to amend. The choice, at least initially, is his. If he chooses to stand on his complaint, then the trial court can determine whether the complaint, as it is currently pleaded, states aiding and abetting claims against any of the three defendants. If plaintiff seeks leave to amend, then the trial court can exercise its discretion whether to allow an amended complaint, and defendants can respond to any amended complaint that the court allows.[16]

We recognize that, after concluding that it lacked jurisdiction, the trial court observed that repleading would be futile. However, we have reversed the trial court's jurisdictional ruling on which that observation apparently depends; moreover, neither defendants nor plaintiff had advised the trial court of the Supreme Court's decision in *Granewich* or our and the Supreme Court's decisions in *Reynolds*, all of which potentially bear on whether plaintiff's allegations state aiding and abetting claims against defendants. Given that procedural posture, we do not view the trial court's observation as necessarily being the last word on the subject. We accordingly reverse and remand the limited judgments.

Limited judgments reversed and remanded.

---

[16] We express no opinion on those potential issues.